## WILLIAM SCOTT *vs.* JAMES BAY.

The working of quarries and blasting of rocks, whereby large quantities of rocks and stones were thrown upon the dwelling house and premises of the plaintiff, breaking the doors, windows, &c., is a case for an action of *trespass quare clausum fregit*, and not for an action on *the case.*

Scott vs. Bay.

Such acts constitute a forcible breaking of the plaintiff's close, and the in-juries resulting therefrom would be *immediate* and not *consequential*, and hence *trespass* and not *case* is the proper remedy.

An injury is considered *immediate* when the act complained of *itself* occasions it, and not merely a consequence of that act; the legality or illegality of the original act is not the test whether the remedy should be trespass or case, though the intent is a proper subject for the jury to consider in de-termining damages.

If, by means of this blasting, "all persons on or about said premises were kept in continual fear and jeopardy of their lives, rendering a proper at-tention to business full of fear and danger," &c., it would constitute a *nuisance*, and as such, would form a proper ground for an *action on the case*.

Diminution of the value of the property for the purpose of renting, and the prevention of the plaintiff's servants from performing their labor, and damage resulting from water passing through a hole in the roof, caused by one of the explosions from the quarries, are *consequential* damages, and as such, recoverable in *case*.

In an action of trespass on the case, one count of the nar disclosed injuries recoverable in *trespass*, the other such as were recoverable in *case*, and part of the proof, at least, supported the latter count. HELD:

That a prayer which required the court to *treat all the injuries complained of* as *resulting in damages which were recoverable in trespass* and not in *case* is erroneous, and was properly rejected.

Where the defendant had rented his quarries, but was present on several occasions, and by his conduct adopted the acts of his tenants, assumed the responsibility of the acts complained of, and defied legal proceedings, a prayer which asked the court to assume that *all the injuries* were the acts of the tenants exclusively, is clearly erroneous.

The fact that the defendant used proper precautions in the working of his quarries, constitutes no vindication of him for the injuries resulting to the plaintiff.

Unless a party can show a right either in the nature of a presumed grant or easement, or in some other mode, to use his property in a particular way, he cannot so use it if it occasions injury to his neighbors, in the quiet enjoyment of their legal rights and privileges, and it makes no difference whether precautions were used or not to prevent the injury complained of.

If one carry on a lawful trade in such a manner as to prove a nuisance to his neighbor, he must answer in damages.

APPEAL from Baltimore county court.

This was an action of *trespass on the case*, brought by the appellee against the appellant, to recover damages caused by the working of a stone quarry.

Scott *vs.* Bay.

The declaration contains two counts. The *first* states, in substance, that plaintiff and and defendant owned adjoining tracts of land; that upon that of defendant were situated large quarries of rock, near to the boundary line between the two tracts, and near to an ancient dwelling house, occupied by the plaintiff, and which had stood there on his land long prior to the opening of said quarries; that defendant, "not ignorant of the premises, but maliciously contriving and intending to injure" the plaintiff, "and wholly to deprive him of the quiet possession and enjoyment" of his said land and dwelling, and thereby to render the same of less value, caused great damage and injury thereto, "by means of blasting the large bodies or quarries of rock aforesaid, by the explosion of large quantities of gunpowder near the aforesaid tract of land, dwelling and premises, whereby large stones and pieces of rock were thrown in, on, through and around the same in every direction, cutting and breaking the doors, window-sashes and roof of the said dwelling house, breaking the window-glass, splitting and cracking the walls and ceiling of the same, it being a large stone. dwelling house, and otherwise injuring the said plaintiff by cutting to pieces the window-curtains, blinds and furniture of the said dwelling house, to the great damage and injury of the said plaintiff." The *second* count charges, that with the same intent and by the same means, stones and rocks were thrown upon the premises of the plaintiff "with great force and violence, destroying the farming instruments, carts and vehicles on the said premises, breaking and injuring the fences on the same, injuring the gardens, killing and wounding the cattle, animals and poultry on the same, and keeping all persons on or about the said premises in constant fear and jeopardy of their lives, rendering a proper attention to business and occupation full of fear and danger, each explosion of gunpowder aforesaid rendering it absolutely necessary to retire for safety to some secure and protected place, and otherwise injuring the said plaintiff by the means aforesaid, thereby rendering the aforesaid tract

of land, dwelling and premises of far less value and worth"
than they otherwise would be.    The plea was *non cul.*

*Exception.* On the part of the *plaintiff* it was proved by
various witnesses, that the dwelling was built long before the
opening of the quarries; that plaintiff bought about ten years
before the suit, and the quarries were before and have been con-
tinually ever since worked by defendant or his tenants; that de-
fendant was active at the quarries giving directions, &c., that
he was aware of the damage done, and once offered a quarter
of a dollar to pay for it; when remonstrated with by plaintiff
was heard to say, I assume all responsibilities, and upon
plaintiff's threatening to sue, told him that he, plaintiff, could
not be kicked into a suit.    The injuries proved were sub-
stantially those complained of in the declaration, and are suf-
ficiently stated also in the opinion.

The *defendant* on his part, offered testimony by several
witnesses to prove, that the quarries were rented during most
of the time that the injuries complained of were committed,
and that proper precaution was used in the working of the
quarries, that timely notice of the blasts was always given by
the ringing of a bell, and that plaintiff paid less for the pro-
perty than he had represented, and that his, (defendant's,)
tenants, at various times, had repaired the injury done and
compensated the plaintiff therefor.

The defendant then offered the three prayers set out in the
opinion, all and each of which the court, (FRICK, C. J.,
PURVIANCE AND LE GRAND, A. J.,) refused to grant and
defendant excepted.    The jury rendered a verdict for the
plaintiff, assessing the damages at $1200, and judgment be-
ing rendered accordingly the defendant appealed.

The cause was argued before ECCLESTON, MASON and
TUCK, J.

*Thomas Parkin Scott* for the appellant.

1st. The first prayer, that the plaintiff cannot recover in this
form of action, because the acts and doings complained of,

Scott vs. Bay.

if any injury was thereby sustained, were a forcible breaking of the plaintiff's close, and were the *direct and immediate* cause of the injury, which was not, therefore, in contemplation of law *consequential*, should have been granted. 8 *Eng. C. L. Rep.*, 301, *Wakeman vs. Robinson.* 18 *Johns. Rep.*, 257, 261, 285, 288, *Percival vs. Hickey.* Both counts of the nar charge, that the defendant "*maliciously*," &c., did the acts; this is a variance between the writ and the nar, of which the defendant may take advantage by a prayer, that plaintiff is not entitled to recover in the form of action he has chosen. 16 *Wendell*, 531, 536. Wherever the injury is immediate on the land of the plaintiff, the action must be *trespass quare clausum fregit*, and the injury cannot be waived. 14 *Eng. C. L. Rep.*, 355, *Morton vs. Shoppee.* Where the injury is stated in the nar, or appears on the trial to be wilfully done, the action must be *trespass* and not *case.* 3 *New Hamp.*, 465, *Dalton vs. Favour.* Immediate injury produced by a negligent act, cannot be waived. 3 *Conn.*, Gates *vs. Miles.* See also 5 *Monroe's* question arose on demurrer. 2 *Iredell*, *Rep.*, 294. There can be no waiver of 5 *Mees. and Wels.*, 588, 593. 4 *Eng. Law* 10 *Eng. C. L. Rep.*, 316. 3 *East*, 593, 489, *Grahame vs. Harris.* If a gun is fired over towards another's land, it is trespass and not case. In 4 *Denio*, 311, there was no force used, and that case evidently differs from this. Again, this prayer clearly points to the pleadings, and the question, therefore, can be raised under the act of 1825, ch. 117.

2nd. The plaintiff cannot recover for injuries occasioned by the tenants of the quarries. The landlord is not responsible for any acts his tenants may do to the prejudice of another. 1 *Chitty on Pl.*, 67, 71. The employer is liable when the servant acts under his direction, but not when he transcends the line of his duty. 4 *Taunton*, 649. 6 *G. & J.*, 297, *Hungerford vs. Steam Co.* 2 *H. & G.*, 319, *Brown vs. Purviance. Story on Agency*, sec. 454, *and* note. 12 *Eng. C.*

*L. Rep.*, 313, 316, 317.   6 *Mees. and Wels.*, 510.   The liability only attaches when the landlord is in possession.   56 *Eng. C. L. Rep.*, 784, 786, 799 to 804.

3rd.  If proper precautions were used in working the quarries, the plaintiff cannot recover, and such precautions were used in this case.  8 *Eng. C. L. Rep.*, 301.  All proper precautions must be used in carrying on any business, but there are some that cannot be prosecuted without risk.  If a man digs his own ground, and his neighbor's wall falls, without design or negligence, it is *damnum absque injuria.* 17 *Johns. Rep.*, 92, *Panton vs. Holland.*  12 *Mass. Rep.*, 220, *Thurston vs. Hancock.*  It is said that the defendant was under an injunction not to work the quarries, but this case had been settled by the dismissal of the suit at law, and the injunction would at any time have been dissolved upon motion without notice.   4 *Paige*, 171, 173, *Lasala vs. Holbrook.* The quarrying of stone is a lawful, useful and necessary business, and cannot be abandoned.

*Charles J. Pennington* for the appellee.

1st.  The working of the quarry, in the manner in which it was done, constituted a clear *nuisance* in law, and *trespass on the case* and not *trespass quare clausum fregit,* was the proper form of action.   The gist of the action is the *depreciation and almost total destruction* of the value of the property, and the constant interference with the safe possession and enjoyment of it, and not the immediate injury inflicted by the throwing of the stones upon and against the house.   That this case is embraced within the definition of a *nuisance,* see 2 *Greenleaf on Ev.,* sec. 465.   That the damages were consequential, and *case* was, therefore, the proper action, see *Browne on Actions at Law,* 45 *Law Lib.*, 362 to 421, and cases there cited.   *Archbold's Nisi Prius,* 49 *Law Lib.*, 401 to 420.   The firing of a gun, *in vacuo,* without intention of striking the land of the plaintiff, will support *case* and not *trespass.*   There is a clear analogy between such a case and the case at bar.   4 *Denio*, 311, *Fish vs. Dodge,* is also a

case very analogous to this. Where there are both direct and consequential damages, either *case or trespass* may lie. 6 *H. & J.*, 230, *Knott vs. Digges.* The first prayer, therefore, was properly rejected.

2nd. The defendant is responsible also for the renting of the quarry if he knew it to be a nuisance. The testimony shows that he was working and superintending it. A landlord cannot create a nuisance and then let out the land with such nuisance upon it without being responsible. *Broom on Parties to Actions*, 56 *Law Lib.*, 253, and cases there cited. 4 *Taunton*, 649, *Leslie vs. Pounds.*

3rd. The third prayer was properly rejected, because it assumes the fact, that defendant had a right to work the quarries. Whenever he used his quarry so as to injure the plaintiff he was liable, whether he used proper caution or not. No man has a right so to use his own property as to injure that of his neighbor. Again, this prayer is objectionable in form, because it assumes that proper precautions were used, when there was no evidence of it in the record. This the court had no right to do. 9 *G. & J.*, 250. 11 *G. & J.*, 490. This prayer would also have left to the jury a point of law, as to what constituted proper precautions.

*Wm. F. Frick* on the same side.

1st. The first question is, should the action have been trespass or case? and it is material to note that it does not arise upon demurrer, as argued on the other side. The question submitted to the court below was, whether, *upon the whole evidence,* case was the proper form of action? the pleadings were not referred to nor considered by the court. 2 *Gill*, 436, *Randall vs. Glenn.* 4 *Gill*, 421, *Stockton vs. Frey.* The prayer says, that the plaintiff could not recover *in this form of action*, not under this *particular declaration.* See 2 *G. & J.*, 306, as to the policy of the act of 1825, ch. 117. The evidence justifies an action of case rather than trespass; the necessary and unavoidable use of the quarry was to injure the property of the plaintiff, and utterly to depreciate its value,

in fact to render it tenantless. These acts were done on the defendant's own land, and that they were done *by force*, does not make them less a *nuisance*. The theory of the other side, that because there has been a technical breaking of the close, the action must be trespass and not case, is not sustained by the authorities. *Lord Raymond*, 1399, *Reynolds vs. Clarke*. To stand on one's own land and fire into the decoy-pond of another was held a *nuisance*, in note to 11 *East*, 574, *Keeble vs. Hickeringill*. See also 7 *Car. and Payne*, 410, *Wells vs. Ody. Strange.*, 634. 6 *Term. Rep.*, 411, *Stone vs. Cartwright.* 32 *Eng. C. L. Rep.*, 560. The fact that *malice* is charged in the nar is not the test of the distinction between trespass and case, neither is the force. Every action on the case, except for *negligence*, in its inducement avers malice. In an action of *trespass vi et armis*, there need not be an allegation of force. But the party may *waive* the trespass and declare for *consequential* damages, and the fact that the close is broken makes no difference. The case in 5 *Mees. and Wels.*, 588, does not raise the question whether case will lie for trespass to land. It was a case of a plain, naked trespass, with no *consequential* damages. The court there do not mean to say that in case of consequential, as well as immediate damage to land, you cannot waive the latter and go in case for the former; they merely decide, that where there is an immediate damage to land you cannot sue in case for *it*. But where there are both direct and consequential damages, either trespass or case will lie. Here there were various acts proved that were in fact no breaking of the close, such as the explosions, and concussion of the air following therefrom, &c.

2nd. There was evidence to show that the defendant was working the quarry even when it was under tenancy, and the objection to the second prayer is that it shuts out this proof. But this was a nuisance, and wherever a party rents *land*, the necessary use of which makes a nuisance, he is responsible for the acts of his tenants. 12 *Eng. C. L. Rep.*, 316, 317, *Laugher vs. Pointer*, notes the distinction between moveable and fixed property in this respect. If a man erects a nui-

sance, and lets the land and receives the rent, it is an upholding of the nuisance, and he is liable. 12 *Mod.*, 635, *Roswell vs. Prior.* 28 *Eng. C. L. Rep.*, 220, *Rex vs. Pedly.* The renting of property for the purpose of carrying on a nuisance, makes the landlord responsible. 4 *Denio*, 311, *Fish vs. Dodge.* If he erects a nuisance and *sells* the land he is responsible. 3 *Denio*, 306, *Waggoner vs. Jermaine.* 7 *Mees. and Wels.*, 455. *Thompson vs. Gibson.* See also 23 *Eng. C. L. Rep.*, 52, *Rex vs. Moore.* 1 *Denio*, 524, *People vs. Cunningham* 56 *Eng. C. L. Rep.*, 784. Where the landlord interferes with the premises during the tenancy he is responsible. 4 *Taunton*, 649. Here the defendant said, " *I assume all responsibilities,*" and "*sue, you can't be kicked into a suit.*"

3rd. The third prayer assumes facts that do not exist, and besides the law of it is not correct. The right to quarry is a qualified right, and he cannot do it if he injure his neighbor. This prayer, moreover, leaves to the jury to find that proper precautions were used when there is no such evidence, and the court cannot instruct the jury upon a hypothetical case.

*John V. L. McMahon* for the appellant, in reply.

The questions presented by the first and second prayers are of some nicety and interest. The plaintiff, as shown by the evidence, purchased the property and put himself down by the side of this quarry, which was then an open and carrying on *nuisance*, if such a term may be applied to it. He was cognizant of its existence, for at the time of his purchase the defendant was in possession and working it. He did this because he was about to carry on the same occupation of which he complains—*a rival quarry.* The evidence also shows, that the quarry was rented out on *bona fide* leases for more than four-fifths of the time, and that the larger part, if not the whole of the damage, was done by the tenants, and there is also evidence from which a jury might infer that *compensation* had been made, which would be a perpetual bar to the action. The plaintiff has got the *benefit* of an action of *trespass*, and he now falls back upon the action of *case;* the

*trespasses* were considered by the jury in assessing damages, and hence the objection to the nature of the action is not, *as to its results*, a mere *formal* objection.

Wherever there is injury received from an act *of force*, no matter how feeble or how great, it is cause for an action of *trespass*, unless the party can make out a case of election. 1 *Chitty on Pl.*, 144, 145. 3 *East*, 593, 595. 2 *Saunders on Pl. and Ev.*, 855. Where the consequence flows directly from the act of force, it is proper for an action of trespass. 1 *Leigh's N. P.*, 141. But this is something more; it is not only trespass, but a trespass to the freehold, proper for an action of *trespass quare clausum fregit*. The action on the case is to recover damages where the injury was without force; it is an usurper of the old action of trespass; one of the *brevia formata*. In cases of negligence you may abandon the tort and go on the ground of negligence; so as to consequential damages, you abandon the trespass altogether and go only for the damages which are not the immediate result of the act. 1 *Leigh's N. P.*, 547. If I stand outside of a man's land and throw anything on it, it is *trespass q. c. f.* 3 *Monroe*, 4. 2 *Iredell*, 42. 3 *Barber*, 45. 3 *East*, 593. But where I stand on my own land, and my act begins and ends on *it*, and injury thereby results to another's land, this is *case*. But where the act does not take effect until it reaches the land of another, it is trespass. The allegation is here the throwing of stones, in, over and through the land of the plaintiff. The allegation, "*whereby*" damages resulted, is an allegation that they resulted directly from the trespass. 8 *G. & J.*, 302.

The *second* count is also an allegation *in trespass*, and differs only in charging *alia enormia* as to the direct consequences of the *trespass*. The distinguishing characteristic of an action of case for a *nuisance* is, that it is a remedy for injuries arising without force. 2 *Saunders on Pl. and Ev.*, 685. No case can be found where *case* lies, where there is a trespass to land. The agglomeration of trespasses does not constitute a nuisance. What becomes of a *trespass with a continuando*,

Scott *vs.* Bay.

if this be law? Suppose there was a demurrer to the second count, would it not be ruled good? This is not a case of variance between the writ and declaration proper for a *plea in abatement.* 6 *Durn. and East,* 129, 130. Where there is a mistake in the form of the action, if it be apparent, you may move for a nonsuit, or demur, or move in arrest. *Archbold's Pl.,* 21. 1 *Chitty's Pl.,* 226. *Browne on Actions at Law.* 45 *Law Lib.,* 395, 396. 10 *Eng. C. L. Rep.,* 316. 4 *Eng. Law and Eq. Rep.,* 401. Whenever there is in the progress of the trial an objection apparent on the declaration which would prevent recovery, it may be taken advantage of by a prayer presenting the question. 5 *G. & J.,* 494. The prayer here raises the question on the *pleadings;* it speaks of the acts *complained of,* not those proved; it looks to the *gravamen* of the charge in the declaration. There is no case of waiver in reference to trespass to land; the case in 5 *Mees. and Wels.,* 143, is clear on this point. There is no allegation of negligence; the injury is alleged to be *wilful* which makes trespass. 45 *Law Lib.,* 261.

2nd. The second prayer concedes the liability of defendant when the quarry was not let out, or when worked by defendant, or his agents or servants, whether let out or not. This prayer only asks exemption where three things concur:—1st, that the quarry was let out; 2nd, that defendant did not work it; and 3rd, that it was not worked by his agents or servants. It therefore raises the naked question of *landlord liability* for acts done by *tenants.* The general doctrine of the liability of landlord and tenant is stated in 6 *Law Lib.,* 139. The tenant is in no sense the *agent* of the landlord. *Story on Agency,* 454. *Lord Littledale,* in 12 *Eng. C. L. Rep.,* 313, 316, 317, *Laugher vs. Pointer,* first opened up the doctrine of a distinction between *real* and *personal* estate, as to the renting of nuisances. But this doctrine is repudiated and exploded, and the case overruled by 6 *Mees. and Wels.,* 510; 9 *Do.,* 713, and 40 *Eng. C. L. Rep.,* 178, 179, the last case bringing it down to the simple question as to who was the employer? But the whole doctrine of principal and agency is utterly

56    v. 3

inapplicable to landlord and tenant; there is no principle by which the tenant is held to be the agent or servant of the landlord.

The case of *Lesly vs. Pounds*, 4 *Taunton*, is commented on in 56 *Eng. C. L. Rep.*, 801, 802, as no authority to the point of a lease. Where the landlord lets a *nuisance*, the thing *itself* being a nuisance, and receives rent, he is responsible, but there is no authority that he is liable for a nuisance made by the tenant. The case in 56 *Eng. C. L. Rep.*, 784 to 804, proceeds on the broad ground, that the landlord out of possession is in no degree responsible for the acts of the tenant, and not upon the ground of his knowledge or ignorance of the use to be made of the property by the tenant, or of the *necessary* use thereof. The case in 4 *Denio*, 311, has no authority to rest upon; it is a new doctrine, and is in conflict with 56 *Eng. C. L. Rep.*, 784, and overruled by it. What would be the consequences of this doctrine? It affirms broadly, that if I know to what purpose a man may be about to apply property that I may *sell*, lease, give or devise to him, I am responsible. It applies as well to cases of *sale* as to leases, to *personal* as real estate. According to this doctrine, if I loan a pistol to a man, knowing he is to fight a duel, this makes me a murderer; if I loan an axe, and I know the man is going to cut trees upon his neighbor's land, I should be liable in trespass; if I loan my cane, knowing that the man is to commit an assault with it, I am liable for an assault and battery.

3rd. As to the third prayer: If the action be *case*, as is insisted on the other side, how is the plaintiff to recover, except on the ground of *negligence?* If he waives the trespass, he must treat the *negligence* as the cause of action. 18 *Johns. Rep.*, 228. It is incumbent on him to show *negligence*, and if there is no negligence, there is no right to sue in case. *Smith's Leading Cases*, 43 *Law Lib.*, 329, 330.

MASON, J., delivered the opinion of this court.

The first count in the present declaration clearly discloses

a case of *trespass quare clausum fregit,* and not an action *on the case.* This count alleges, that the appellant caused great injury to the appellee by opening quarries and blasting rocks therefrom, whereby large quantities of rocks and stones were thrown upon the dwelling house and premises of the appellee, breaking the doors, windows, &c., and thus depriving him of the quiet possession and enjoyment of his property. Such acts would constitute a forcible breaking of the plaintiff's close, and the injuries resulting therefrom would be *immediate* and not *consequential,* and therefore *trespass* and not *case* is the proper remedy.

Upon all questions of pleading, *Chitty* has always been regarded as high authority in Maryland, and to avoid the embarrassment of the present question by a review of the numerous and apparently conflicting authorities cited by counsel, this court is willing to rest this case upon the law, as announced by *Chitty,* 1 *vol.,* 117. The author there lays down the general principle to be, that "an injury is considered as immediate when the act complained of *itself,* and not merely a consequence of that act, occasions the injury." This principle, as well as the illustrations given of it by *Chitty,* embrace a case like the one made by the first count.

It was intimated in argument, that as the defendant was pursuing a lawful business, and as there was no design to perpetrate the wrong complained of, therefore the remedy should be case. *Chitty,* (page 119,) distinctly affirms, that the legality or illegality of the original act is not in general the criterion or test, whether the injury was immediate or consequential, or whether the remedy should be trespass or case. And in the case of *Taylor vs. Rainbow,* 2 *Hen. and Munf.,* 423, the defendant had negligently, but without design to injure, discharged a gun and wounded the plaintiff, who sued in case. It was held that trespass was the proper remedy, and that it was immaterial whether the injury was committed wilfully or not. The intent, however, is a proper subject for the consideration of the jury in determining the damages. 2 *Stark.,* 213.

Scott *vs.* Bay.

The second count is in part obnoxious to the same objection. The averments, however, in that count, "that all persons on or about the said premises were kept in constant fear and jeopardy of their lives, rendering a proper attention to business full of fear and danger," &c., would constitute a nuisance, and as such, would form a proper ground for an action on the case.

That the evidence discloses a case of an aggravated wrong to the rights and property of the plaintiff, cannot be denied. It is equally true that most of the plaintiff's testimony disclosed acts, the damages resulting from which were recoverable in trespass and not in case. For instance, all those portions of the testimony showing the direct injury to the plaintiff's property, such as the damage to the roof and walls of the house and grounds, present a case of *immediate* injury and constitute clearly a trespass. On the other hand it is equally clear, that the evidence which showed the value of the property to have been diminished for the purposes of renting and occupation, and that the plaintiff's servants, through fear, &c., were prevented, to the plaintiff's injury, from performing the labor for which they had been employed; and that the damage which subsequently resulted to the property by means of the water which passed through the hole in the roof, which was caused by one of the explosions, were consequential damages, and as such, recoverable in case.

Upon this state of the pleadings and evidence, the defendant prayed the court to instruct the jury, "that the plaintiff cannot recover in this form of action, because the acts and doings complained of, if any injury was thereby sustained by the plaintiff, were a forcible breaking of the plaintiff's close, and were the direct and immediate cause of the injury, and the injury was not, in contemplation of law, consequential upon the acts and doings complained of."

This prayer was defective, if for no other reason, because it required the court to treat *all the injuries complained of* as resulting in damages which were recoverable in trespass and not in case. We have already shown that one count in the

declaration disclosed injuries rece 'erable in case, and that a part, at least, of the testimony supported such a count.

The second prayer of the defendant asks the court to say, "that the plaintiff cannot recover for any injury sustained by him whilst the quarries were let out and not worked by the defendant, but were worked by other persons, not the servants or agents of the defendant."

This prayer presents the proposition, that if the nuisance in question was not occasioned directly by the defendant, but by other persons, not his agents or servants, then he is not liable to damages; in other words, that a landlord is not responsible for a nuisance occasioned by his tenant. The evidence in the cause dispenses with the necessity of deciding this distinct proposition. It was proved that on several occasions, at least, the defendant was present, and by his conduct, adopted the acts of his tenants as his own acts. He even, on one occasion, *assumed the responsibility* of the conduct complained of, and defied legal proceedings against him. Under such a state of facts, it was clearly wrong in the defendant's counsel to ask the court to assume, that *all the injuries* complained of were occasioned by the tenants exclusively, without the sanction, approbation or adoption of the plaintiff.

The third prayer asserts the legal proposition, "that the defendant had a right to quarry stone from his quarries, and that the plaintiff cannot recover for any injury he may have sustained in consequence of such quarrying, if the jury believe that proper precautions were used in working the quarries, and that such injury was sustained without default of the defendant."

In the first place, there is no sufficient evidence in the record to warrant such a prayer, that proper precautions were used in working the quarries. But if proper precautions had been taken, they would still constitute no vindication of the defendant for the injuries resulting to the plaintiff. Unless a party can show a right, either in the nature of a presumed grant or easement, or in some other mode, to use his property

in a particular way, he cannot use it in that particular way, if it occasions injury to his neighbors, in the quiet enjoyment of their legal rights and privileges, and it makes no difference whether precautions were used or not to prevent the injury complained of.

It is a rule of the common law, that a man should so use his own property as not to hurt or injure another, and therefore if one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages. There are many cases in the books where this doctrine has been applied, and among the number are those where a man erects a smith's forge, swine-sty, lime-kiln, tallow-furnace, machine-shop, quarry or privy, so near the dwelling-house of another as to render it unfit for occupation. *Bradley vs. Gill, Lutw.,* 69. *Aldred's case,* 9 *Coke,* 58. *Jones vs. Powell, Hutton,* 135. *Morly vs. Pragnel, Cro. Car.,* 510. *Rich vs. Basterfield,* 56 *Eng. C. L. Rep.,* 786. *Fish vs. Dodge,* 4 *Denio,* 311. And, especially, for the general principles applicable to this case, the court would refer to the case of *Hay vs. The Cohoes Company,* 3 *Barbour, (N. Y.,)* 42.

For the reasons assigned, we think the court below was right in rejecting the defendant's prayers, and therefore we affirm its judgment.

*Judgment affirmed.*