## MICHEL VOGEL *vs*. OWEN McAULIFFE.

The plaintiff occupied part of a house owned by the defendant and his son, as tenants in common, the son being the plaintiff's landlord. The defendant's servants in November, 1893, entered the plaintiff's premises by his permission for the purpose, as they stated to him, of repairing the furnace, and afterwards, by the defendant's orders, took the furnace apart and destroyed it. The defendant refused to replace the furnace whereby the plaintiff was deprived of the use of it and subjected to much inconvenience.

*Held*, that the plaintiff's injury being consequential, trespass on the case was the proper form of action.

*Held*, further, that testimony showing the ill health of the plaintiff's infant child at the time of and immediately after the destruction of the furnace and the inconvenience to which the plaintiff was subjected in taking proper care of his child in consequence of being deprived of the use of the furnace, was admissible.

*Held*, further, that the defendant's request to charge the jury as follows was properly refused : "That the plaintiff had a right to deduct from his rent any damage resulting from any diminution of his enjoyment of the premises during the month of his tenancy ; and if he kept on living there after the month expired in which the furnace was taken apart, he can recover for no discomfort thereafter, as he took the tenement as he found it."

*Held*, further, that even if the defendant did not order his servants to destroy the furnace, he became liable for their acts if he subsequently adopted and ratified them.

In trespass on the case, the jury are warranted in awarding exemplary damages, if the defendant's acts were prompted by malice.

DEFENDANT'S petition for a new trial.

*February* 2, 1895. TILLINGHAST, J. 1. We do not think the plaintiff misconceived his form of action. The declara-

tion does not allege nor does the proof show that the defendant's servants wrongfully entered the plaintiff's premises, that is, that they committed any trespass in so doing, but on the other hand the proof shows that they entered with the implied permission of the plaintiff, he having been present at the time and having asked them as to their purpose ; and upon being informed that they were there to repair his furnace so as to prevent the gas from escaping therefrom into the tenement of one Page who lived in the same house, he made no objection, but went away leaving them at work thereon.

The proof also shows that after the defendant's servants had taken the furnace apart, they then and there destroyed the same by breaking some parts of it in pieces, and that the defendant wrongfully neglected and refused to replace said furnace although requested by the plaintiff so to do, by reason whereof the plaintiff suffered much inconvenience and injury.   It was conceded by the plaintiff at the trial that the defendant, who was a tenant in common with his son Eugene T. McAuliffe, the plaintiff's landlord, of the house in which the plaintiff lived, had the right to enter said premises for the purpose of making repairs upon said furnace.   Moreover, the defendant's attorney requested the court to charge the jury "that the defendant had a right to take the furnace apart to repair it, or to ascertain if it was leaking gas," and the court so instructed them.

It appears, then, that the substantial injury of which the plaintiff complains was not the effect of the force direct and intentional, but resulted from the wrongful and fraudulent conduct of the defendant in removing and destroying said furnace, and neglecting and refusing to replace the same, and hence was consequential in its nature.   It is well settled that case and not trespass is the proper form of action where the damages sought to be recovered are consequential.   The general principle laid down by Chitty in his exhaustive work on Pleading, Vol. 1, p. *127, is that "an injury is considered as *immediate* when the act complained of *itself*, and not merely a *consequence* of that act, occasions the injury."   See

also *Scott* v. *Bay*, 3 Md. 431 ; *Scott* v. *Shepherd*, 1 Smith's Lead. Cas. 7th Am. ed. *549, and note by the American editors ; *Brennan* v. *Carpenter*, 1 R. I. 474 ; *Hunt* v. *Pratt*, 7 R. I. 283 ; *Fallon* v. *O'Brien*, 12 R. I. 518. Nor does it matter whether the original act was lawful or unlawful, as this is not the true criterion ; but the true distinction is whether the injury is immediate or consequential. See Oliver's Precedents, 4th ed. p. 444, and cases cited ; *Howe* v. *Newmarch*, 12 Allen, 49 ; 26 Amer. & Eng. Encyc. of Law, 699–707, where most of the leading cases on this subject are collected.

2. We do not think the court erred in admitting the testimony offered by the plaintiff as to the condition of his infant child at the time of, and immediately following the destruction of his furnace. The child was ill with bronchitis, and on account of the destruction of the furnace, had to be taken into the kitchen and cared for there, which according to the testimony, was not so convenient or suitable a place as it had previously occupied. And although it does not appear that any injury was sustained by the child on account of the change, yet the plaintiff was annoyed and subjected to more or less mental suffering and anxiety by reason thereof.

3. The defendant requested the court to charge the jury "That the plaintiff had a right to deduct from his rent any damage resulting from any diminution of his enjoyment of the premises during the month of his tenancy ; and if he kept on living there after the month expired in which the furnace was taken apart he can recover for no discomfort thereafter, as he took the tenement as he found it." The request was refused and the defendant excepted. We fail to see the pertinency of the first branch of this request, as the relation of landlord and tenant did not subsist between the plaintiff and the defendant. Eugene T. McAuliffe was the plaintiff's landlord, and he was not the author of the injury complained of; and it would certainly be a strange doctrine to advance, that rent due to a landlord could be retained by the tenant for damages caused by the tortious acts of a stranger.

As to the second branch of said request, viz., that if the

plaintiff continued to live in said tenement after the expiration of the month in which the furnace was destroyed, he could recover for no discomfort thereafter, as he took the tenement as he found it, it is to be observed, first, that as the plaintiff's landlord was not in any way responsible for said furnace, nor bound to replace said furnace, the plaintiff could not leave said tenement without becoming liable for future accruing rent, without first giving the statutory notice of his intention to quit. Pub. Stat. R. I. cap. 232, §§ 3, 4. As the furnace was destroyed on the 24th day of November, 1893, it was not possible for the plaintiff to have given a notice which would have had the effect to terminate his tenancy on the first of the following month, or prior to the first day of January, 1894. Second, that while it is doubtless true that the plaintiff had no right to aggravate his damages, by remaining in said tenement for an unreasonable length of time without himself providing proper means for heating the same, yet under the proof submitted as to his efforts to supply the place of the furnace by using stoves and a fireplace, and in promptly looking for another tenement, we do not think it can be successfully contended that it was unreasonable to allow him to recover such damages as he was able to show he had suffered up to the time of the bringing of this action, which was on January 4, 1894.

4. The defendant alleges that the verdict was against the evidence and the weight thereof. An examination of the evidence which was quite voluminous, shows that it was very conflicting, especially upon the vital issues in the case. The plaintiff offered evidence to the effect that the furnace was taken down and destroyed by the defendant's servants in pursuance of his orders, on the 24th of November, 1893, while the defendant offered evidence to the effect that he was confined at home by illness at that time and had no connection with or knowledge of the acts complained of until some time afterwards. Amongst the witnesses called by the plaintiff was one Abontius B. Lawrent, who testified that he was in the defendant's employ at the time, and was personally ordered by him at the store on November 24th to go with one

Fitzgerald, another servant of the defendant, and take down plaintiff's furnace, and not put it up again, stating to them at the same time that he didn't care if they broke it all to pieces, and that they obeyed the order and then reported to him as to what they had done.

Charles A. Springer testified that in the latter part of November, 1893, he went with the plaintiff to defendant's store on Weybosset Street, and finding him there, plaintiff asked him if he intended to repair the furnace, or what he intended to do about it, and he said "nothing at all; he would have nothing at all to do about it." The plaintiff testified that he saw the defendant at his store on the 27th or 28th of November, and asked him if he was going to repair the furnace, and that he replied, "No, he would not." Owen McAuliffe the defendant testified in cross examination that the plaintiff came to him about Christmas with another man, and "said he wanted to know what right I had to tear down the furnace." "I said I supposed it was because it was not fit to use." "I told him I thought it was a benefit to him if he had a leaky, gassy furnace to have it torn down." And in answer to the question, "Didn't you tell him when he asked you that question of why you destroyed his furnace, that it was because of escaping gas from your furnace into Charles Page's tenement?" he replied : "I told him it was because it was leaking gas into Mr. Page's tenement, and if it did not cost more than five or ten dollars I would replace it. They tell me that the furnace is in the cellar just as it was torn down, and you can send an expert and find out all about it." The defendant made no pretence to the plaintiff that he was not responsible for the destruction of the furnace, nor would he swear positively that the said interview with the plaintiff did not take place early in December. With this testimony before them, together with other testimony which tended more or less strongly to fortify the position taken by the plaintiff, we cannot say that the jury were not warranted in finding that the defendant was guilty as charged in the plaintiff's declaration. At any rate there is substantial evidence in support of the verdict, and it was competent for the

jury who saw the witnesses and heard their testimony to have accepted the same as worthy of belief; and where the evidence is conflicting, it is for the jury to determine from all the circumstances to whom they will give credit. See *Beattie* v. *Thomason*, 16 R. I. 13; *Sweet* v. *Wood*, *ante*, p. 386; Hilliard on New Trials, 2d ed. 451, and cases cited. Moreover, it was competent for the jury to find, under the evidence offered, and the instruction of the court thereon, that even though the defendant did not personally order his said servants to take down and destroy said furnace, yet that he subsequently adopted and ratified their acts in the premises, and as they were done in his interest, that he thereby became liable for the consequence thereof. Cooley on Torts, 2d ed. 146; *Hagan* v. *P. & W. R. R. Co.*, 3 R. I. 88.

5. We do not feel satisfied that the damages are excessive as contended by the defendant. The wrongful acts of the defendant in destroying the plaintiff's furnace and refusing to replace the same, and thereby depriving him and his family of its use at a season of the year when it was absolutely essential that his house should be heated, were such as not only to entitle him, or, more strictly speaking, to warrant the jury in awarding him not only actual damages but, in their discretion, exemplary damages also; it being a well settled doctrine of the common law that a jury in actions of this sort, may in their discretion inflict exemplary damages, having in view the enormity of the defendant's conduct, rather than mere compensation to the plaintiff. *Kenyon* v. *Cameron*, 17 R. I. 122; Sedgwick on Damages, 6th ed. 564, and cases cited; *Hagan* v. *P. & W. R. R. Co.*, *supra*; although we are not unmindful of the rule that ordinarily, in an action of the case, the actual injury is the measure of damages. *Bradt* v. *Holden*, 12 R. I. 335.

The amount of the verdict in this case ($400) is not so large, in view of the evidence as to the physical condition of the plaintiff and his family, and the trouble and expense to which he was subjected, as naturally to lead us to the conclusion that the jury were influenced by passion, prejudice or ignorance. And the well established rule in this country is

that in cases of *tort*, the verdict will not be disturbed unless it is so excessive or outrageous, in view of all the circumstances of the case, as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them. *Whipple* v. *Cumberland Manuf. Co.*, 2 Story, C. C. 661; *Berry* v. *Vreeland*, 1 Zabr. (N. J.) 183.

The defendant's petition for a new trial is denied and dismissed and the case remitted to the Common Pleas Division with direction to enter judgment upon the verdict.

*Irving Champlin*, for plaintiff.

*George J. West*, for defendant.