Fred HAWKINS et al.

v.

SCITUATE OIL CO., INC.

No. 97–207–Appeal.

Supreme Court of Rhode Island.

Jan. 25, 1999.

Fred A. Kelly, Providence, Jeffrey S. Brenner, for plaintiff.

Carol Nicholson Glick, John G. Hines, Ralph DellaRosa, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

■ When a tortfeasor's negligence deprives a family of the use and enjoyment of their home, is the family entitled to recover damages for their resulting inconvenience, discomfort, and annoyance? We answer this question in the affirmative, reverse the Superior Court's contrary ruling, and remand this case for a trial on damages.

### Facts and Travel

On a fateful day in October 1993, a delivery man working for defendant, Scituate Oil Co., Inc. (defendant or Scituate Oil), drove his truck up to plaintiffs'[1] Glocester residence and mistakenly pumped 100 gallons of home heating oil down the wrong pipe. The oil flooded their unfinished basement and finished their home's habitability. While workmen attempted to resuscitate their house from this oily deluge, the Hawkins family had to relocate to new quarters. Because they could not afford more salubrious accommodations, they scrunched themselves into a small, rented trailer on their property. The family hunkered down there for more than sixteen months until they were able to construct and move into a new house on the same property.

1. The plaintiffs are Fred and Helen Hawkins, individually and as legal guardians of their minor children, Scott Hawkins and Mark Hawkins (plaintiffs, Hawkins, or Hawkins family).

In September 1996, the parties reached a partial settlement of the Hawkins' claims against Scituate Oil. This settlement, however, related only to the actual damages plaintiffs sustained to their real and personal property. Even though it included reimbursement for their out-of-pocket costs and their expenditures relating to consultants, rental of a trailer, and their other, spill-related disbursements, the settlement specifically preserved the Hawkins' remaining claims for a damages trial.

At the conclusion of plaintiffs' case, the trial justice granted defendant's motion for judgment as a matter of law and dismissed plaintiffs' complaint. In doing so, he relied upon the lack of expert medical testimony to buttress plaintiffs' damage claims for the alleged inconvenience, discomfort, and annoyance they suffered as a result of their oleaginous eviction. The Hawkins appealed from this judgment.

For the reasons set forth below, we hold that the trial justice committed reversible error when he granted defendant's motion for judgment as a matter of law. In our opinion, he should not have done so because he thereby prevented the jury from awarding damages to the Hawkins family for the inconvenience, discomfort, and annoyance they suffered after Scituate Oil's tragic misdump left their home uninhabitable. However, we affirm the trial court's granting of Scituate Oil's motion for judgment as a matter of law with respect to the Hawkins' punitive-damages claim.

### Analysis

This Court has allowed occupants of real property to recover consequential and compensatory damages resulting from a tortious interference with their possessory interest in such property. *See Harris v. Town of Lincoln,* 668 A.2d 321 (R.I.1995) (affirming a damages award of $400 per month to compensate for the diminution in the plaintiffs' use and enjoyment of their property caused by the defendant's tortious conduct); *Vogel v. McAuliffe,* 18 R.I. 791, 31 A. 1 (1895) (awarding damages to the plaintiff tenant for his "trouble" and inconvenience caused by the defendant's destruction of and refusal to re-

place the leased premises' furnace). Such a damages award may properly include compensation to the occupants for annoyance, mental suffering, and anxiety proximately caused by any interference with or diminution of their enjoyment of the property. *See Vogel,* 18 R.I. at 793, 31 A. at 2.

The great weight of authority in other jurisdictions also allows occupants of real property to recover damages for the inconvenience and aggravation caused by a tortfeasor's interference with or deprivation of their use and enjoyment of their property. *See, e.g., Board of County Commissioners of Weld v. Slovek,* 723 P.2d 1309 (Colo.1986) (recognizing that the plaintiffs may recover personal-injury damages for discomfort, annoyance, and sickness caused by the defendant's negligent maintenance of a breach in a river bank that resulted in water damage to their property); *Evans v. Mutual Mining,* 199 W.Va. 526, 485 S.E.2d 695 (W.Va.1997) (considering annoyance and inconvenience in measuring damages for the loss of use of real property due to the defendant's negligence); *Piorkowski v. Liberty Mutual Insurance Co.,* 68 Wis.2d 455, 228 N.W.2d 695 (Wis.1975) (allowing the plaintiffs to recover damages for their inconvenience after the defendant contractor negligently cut off the well-water supply to their household for six months). See generally Restatement (Second) *Torts,* § 929 at 544 (1979), which states, in pertinent part:

"(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

\*\*\*

(c) discomfort and annoyance to him as an occupant."

Comment *e* to this section elaborates on this point:

"*Discomfort and other bodily and mental harms.* Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests. He is also allowed to

recover for his own serious sickness or other substantial bodily harm but is not allowed to recover for serious harm to other members of the household, except so far as he maintains an action as a spouse or parent ***." Restatement (Second) *Torts,* § 929 cmt. *e,* at 546–47.

■ The necessity for proving some interference with or deprivation of a possessory interest in the property in question as a condition precedent to obtaining damages for any resulting inconvenience, discomfort, or annoyance distinguishes this type of case from those alleging a mere intentional or negligent infliction of emotional distress. *See, e.g., Swerdlick v. Koch,* 721 A.2d 849, 862–64 (R.I.1998); *see also, e.g., Vallinoto v. DiSandro,* 688 A.2d 830, 838–40 (R.I.1997); *Clift v. Narragansett Television L.P.,* 688 A.2d 805, 812–14 (R.I.1996); *Reilly v. United States,* 547 A.2d 894 (R.I.1988). In the above-cited cases, the plaintiffs failed to allege or establish any tortious interference with or deprivation of their use or enjoyment of any possessory interest in real property. In such circumstances, to safeguard against bogus or exaggerated emotional-damage claims, we have held that plaintiffs seeking to recover a monetary award for the tortious infliction of emotional distress must establish, among other elements, that they experienced physical symptoms of their alleged emotional distress, and that expert medical testimony supports the existence of a causal relationship between the putative wrongful conduct and their injuries. *See Vallinoto,* 688 A.2d at 838–40; *Clift,* 688 A.2d at 812–13; *Reilly v. United States,* 547 A.2d 894 (R.I. 1988). In property-loss cases like this one, however, where a tortfeasor's wrongdoing has interfered with the plaintiff's rightful occupancy of his or her premises, it is unnecessary to mandate evidence of physical symptomatology plus medical-causation expertise before allowing such plaintiffs to recover damages for their resulting discomfort and annoyance. *See, e.g., Vogel v. McAuliffe,* 18 R.I. 791, 31 A. 1 (1895). Because property-loss victims like the Hawkins typically will experience inconvenience, discomfort, and annoyance following such a tangible deprivation as occurred in this case—albeit no corporeal symptoms or medical expertise corrobo-

rates such a loss—we have no need to insist upon the heightened levels of proof that we would otherwise require in establishing pure emotional-distress claims. In sum, in cases like this one involving a physical interference with or a loss of a possessory interest in real property, the prevention of trumped-up or specious-damage demands for alleged intangible personal injuries is of less an evidentiary concern than it is in the context of cases alleging a mere intentional or negligent infliction of emotional distress.

■ Accordingly, with respect to the Hawkins' negligence-based damage claims seeking to recover for the inconvenience, discomfort, and annoyance they experienced after the defendant's negligent oil spill flushed them from their home, the trial justice erred in granting Scituate Oil's motion for judgment as a matter of law. The trial justice, however, correctly dismissed the Hawkins' claim for punitive damages because no evidence existed showing either that the defendant's conduct was intentional or that it amounted to criminal malfeasance. As devastatingly negligent as was this particular oil mishap, such misconduct did not rise to the level of virtual criminality that we have required for a jury to consider a punitive-damages claim. *See Palmisano v. Toth,* 624 A.2d 314, 317–21 (R.I.1993). Moreover, the act in question—a single (albeit catastrophic) instance of misdelivered oil—did not amount to a nuisance. *See Hennessey v. Pyne,* 694 A.2d 691, 695 (R.I.1997) ("Such an isolated incident is not the type of [continuous] conduct that nuisance law is intended to remedy.").

## Conclusion

For these reasons, we sustain the plaintiffs' appeal in part, vacate that portion of the judgment that dismissed their compensatory damage claims, and remand this case for a new damages trial premised on Scituate Oil's negligence. On any retrial, the court shall allow the Hawkins to introduce evidence concerning—and to recover damages for—any inconvenience, discomfort, or annoyance that they experienced in connection with having to abandon their oil-befouled home and with

having to take up residence elsewhere. Moreover, the court shall allow the Hawkins to recover for such injuries irrespective of whether they can point to any physical symptoms of their distress or whether they can proffer any medical expertise to support such claims. They also shall be allowed to recover compensatory damages for any other losses not covered by the settlement that they can prove were attributable to Scituate Oil. Conversely, we affirm that portion of the judgment as a matter of law that dismissed the Hawkins' claim for punitive damages.