No. 2-09-0239     Filed: 3-16-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

STEVE MAYER, ANNE MAYER,                ) Appeal from the Circuit Court
EMILY ALBRECHT, By Her Mother and        ) of Lake County.
Next Friend, Kelly Albrecht, KELLY       )
ALBRECHT, and JEFFREY ALBRECHT,          )
                                         )
        Plaintiffs-Appellants,           )
                                         )
v.                                       ) No. 06--L--294
                                         )
CHICAGO MECHANICAL SERVICES,             )
INC.,                                    )
                                         )
        Defendant-Appellee               )
                                         )
(Vine Condominium Association,           ) Honorable
Schwartzbach Dahlman Management          ) Wallace B. Dunn and
Company, and Kraina Construction,        ) David M. Hall,
Defendants).                             ) Judges, Presiding.

_____

        PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

        In this appeal, we consider whether plaintiffs--who alleged that a defective heating and air

conditioning system furnished and installed by one of the defendants caused mold growth that

rendered their homes temporarily uninhabitable--are entitled to compensation for discomfort and

inconvenience associated with being displaced from their homes. While we leave open the possibility

that damages for discomfort and inconvenience might be available in appropriate circumstances, we

hold that they are not available here.

The pertinent facts may be briefly summarized as follows. Chicago Mechanical Services, Inc. (Chicago Mechanical), installed the heating and air conditioning system at issue in a condominium unit occupied by two of the plaintiffs, Steve and Anne Mayer. The other plaintiffs, Kelly and Jeffrey Albrecht and their daughter, Emily, occupied the unit directly beneath the Mayers' unit, and both units became contaminated with mold. The record reveals that the mold rendered the units uninhabitable for an extended period of time. Plaintiffs brought suit against Chicago Mechanical and three other defendants: Vine Condominium Association, Schwartzbach Dahlman Management Company, and Kraina Construction. The trial court entered summary judgment in favor of Vine Condominium Association and Schwartzbach Dahlman Management Company. Plaintiffs never obtained service of process on Kraina Construction.

In their claims against Chicago Mechanical, plaintiffs alleged that they "inhale[d] fumes emitted by the mold *** becoming sick, ill, and disordered as a consequence, causing [them] to seek treatment, to suffer greatly, and to otherwise incur losses, damages, including being displaced from [their] home[s]." The trial of the claims against Chicago Mechanical was scheduled to commence on September 17, 2007, but on August 28, 2007, the trial court granted Chicago Mechanical's motion for summary judgment on Emily Albrecht's claim, ruling that there was no causal link between the mold growth and any physical ailments Emily suffered. The trial court entered a written finding that there was no just reason to delay enforcement or appeal of that order. On September 17, 2007, plaintiffs filed both a notice of appeal from, and a motion for reconsideration of, the summary judgment order. On the same day, Chicago Mechanical presented a motion in limine to bar plaintiffs from presenting any evidence of "any damages of inconvenience and discomfort." There is no dispute that, by that point, plaintiffs no longer claimed to have suffered any physical injury or illness as a

result of mold exposure. Chicago Mechanical argued that damages for inconvenience and discomfort were not recoverable as a matter of law and that this theory of damages had not been properly pleaded or disclosed during discovery.

The trial court granted the motion in limine. Because proceeding to trial without evidence of damages would have been futile, the trial court then dismissed the remaining claims against Chicago Mechanical (i.e., those other than Emily Albrecht's). Plaintiffs filed a notice of appeal from the orders granting the motion in limine and dismissing the case. The appeal was consolidated with the appeal from the summary judgment on Emily Albrecht's claim. We dismissed both appeals as premature, however, because the claim against Kraina Construction and the motion to reconsider the entry of summary judgment both remained pending. Mayer v. Chicago Mechanical Services, Inc., Nos. 2--07--0937 & 2--07--1069 cons. (2008) (unpublished order under Supreme Court Rule 23). The trial court subsequently denied the motion to reconsider, and the claim against Kraina Construction was dismissed with prejudice. This appeal followed.

Plaintiffs argue that they are entitled to compensation for the discomfort and inconvenience of being forced to leave their homes to escape the dangerous condition caused by the defective heating and air conditioning system. Plaintiffs contend that the right to such compensation was established in Van Brocklin v. Gudema, 50 Ill. App. 2d 20 (1964). In Van Brocklin, manure from the defendant's barn contaminated the plaintiffs' well. For eight months, the plaintiffs were required to get drinking water from a filling station and take sponge baths. The issue considered by the court was "whether the law permits recovery for the elements of inconvenience and discomfort entailed in the temporary loss of a water supply caused by the negligence of another." Van Brocklin, 50 Ill. App. 2d at 27. Finding no Illinois negligence cases on point, the Van Brocklin court considered cases in

the arena of nuisance law. The Van Brocklin court quoted Gempp v. Bassham, 60 Ill. App. 84 (1894), for the proposition that " '[w]here the injury is to physical comfort and results in deprivation of the comfortable enjoyments of a home, the measure of damages is not the depreciation in the rental value of the premises occupied by the plaintiff, but compensation for such physical discomfort, and deprivation of the use and comforts of the home.' " Van Brocklin, 50 Ill. App. 2d at 28, quoting Gempp, 60 Ill. App. at 87.

As Chicago Mechanical points out, this case differs from Van Brocklin, in which the plaintiffs suffered discomfort and inconvenience while they continued to occupy their property. Here, plaintiffs seek compensation for inconvenience and discomfort resulting from being forced to leave their homes. Plaintiffs maintain that if the distinction is of any consequence, it works to their favor. They argue that "[i]f damages for the loss of the use and comfort of one's home can be recovered when the water supply is poisoned, then a fortiori such damages can be recovered when the entire home is poisoned." This logical construct simply begs the question, inasmuch as it presupposes that the result in Van Brocklin would have been the same if the plaintiffs had found temporary housing with clean running water. The only question properly before the Van Brocklin court was whether the plaintiffs could recover for the harm they suffered because they remained on their property and were therefore denied clean water. The court had no occasion to consider whether compensation would have been available if the plaintiffs--like plaintiffs in this case--had moved from the home, thereby avoiding the immediate and direct effects of the tortious invasion of their interests in the enjoyment of their property.

We therefore agree with Chicago Mechanical that Van Brocklin is not on point. Whether damages may be awarded for the inconvenience and discomfort associated with temporary housing

arrangements appears to be a question of first impression in Illinois. While Chicago Mechanical contends that an award of such damages would be unprecedented, it points to no decision barring recovery under similar facts. Rather, Chicago Mechanical relies mainly on rules limiting recovery for the negligent infliction of emotional distress (see Rickey v. Chicago Transit Authority, 98 Ill. 2d 546 (1983)) and barring the recovery of economic damages in tort actions (see Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69 (1982)).

It is not clear to us that either Rickey or Moorman is any closer to the mark than Van Brocklin is. Rickey held that a bystander who witnesses a traumatic event may recover for emotional distress, even in the absence of a contemporaneous impact or physical injury, if the bystander is within the "zone of physical danger." Rickey, 98 Ill. 2d at 555. Under this rule "a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress." Rickey, 98 Ill. 2d at 555. Our supreme court has since held that the zone-of-physical-danger test applies only to bystanders, not direct victims of negligence (Corgan v. Muehling, 143 Ill. 2d 296, 306 (1991)), and has jettisoned the requirement that a physical injury or illness result from the emotional distress (Corgan, 143 Ill. 2d at 308-12). The plaintiff in Corgan alleged that the defendant, her psychologist, committed malpractice by engaging in sexual intercourse with her " 'under the guise of therapy.' " Corgan, 143 Ill. 2d at 300. In holding that the plaintiff stated a claim for recovery for emotional distress, the Corgan court identified the "essential question" as "whether the plaintiff properly alleged negligence on the part of the defendant." Corgan, 143 Ill. 2d at 306. That the plaintiff never feared for her physical safety was no impediment to her claim.

Whether plaintiffs in this case are "bystanders" or "direct victims"--indeed, whether this is even a sensible question to ask in a case that bears little resemblance to either Rickey or Corgan--is not clear. Thus, rather than looking to Rickey for an "overarching unitary theory that would apply to the case at bar" (Corgan v. Muehling, 167 Ill. App. 3d 1093, 1102 (1988), aff'd, 143 Ill. 2d 296 (1991)), it might be more useful to focus on the broad theme of Rickey and other "emotional distress" cases, which is that " 'Illinois courts will compensate genuine mental suffering by applying a rule which also sifts out frivolous claims.' " Rickey, 167 Ill. App. 3d at 1101, quoting McAdams v. Eli Lilly & Co., 638 F. Supp. 1173, 1178 (N.D. Ill. 1986).

In this vein, Chicago Mechanical notes that "[t]he Illinois Supreme Court has cautioned against allowing for purely mental or emotional distress because, in part 'emotional injuries are hardly foreseeable' [(Rickey, 98 Ill. 2d at 555)] and allowing these types of damages to be freely sought would encourage frivolous litigation." There is authority from another jurisdiction, however, that "[t]he necessity for proving some interference with or deprivation of a possessory interest in the property in question as a condition precedent to obtaining damages for any resulting inconvenience, discomfort, or annoyance distinguishes this type of case from those alleging a mere intentional or negligent infliction of emotional distress." Hawkins v. Scituate Oil Co., 723 A.2d 771, 773 (R.I. 1999). The Hawkins court noted that "in cases *** involving a physical interference with or a loss of a possessory interest in real property, the prevention of trumped-up or specious-damage demands for alleged intangible personal injuries is of less an evidentiary concern than it is in the context of cases alleging a mere intentional or negligent infliction of emotional distress." Hawkins, 723 A.2d at 773.

Chicago Mechanical's reliance on Rickey also rests on the questionable assumption that discomfort and inconvenience qualify as "emotional distress" within the meaning of Rickey. In Rickey, the plaintiff allegedly suffered " 'definite functional, emotional, psychiatric and behavioral disorders, extreme depression, prolonged and continuing mental disturbances, inability to attend school and engage in gainful employment and to engage in his usual and customary affairs.' " Rickey, 98 Ill. 2d at 550. We further note the existence of authority from other jurisdictions that, in cases involving damage to real property, inconvenience and discomfort are conceptually distinct from emotional distress and mental anguish. See In re Katrina Canal Breaches Consolidated Litigation, 647 F. Supp. 2d 644, 734-35 (E.D. La. 2009) (applying Louisiana law); Kelly v. CB&I Constructors, Inc., 179 Cal. App. 4th 442, 456, 102 Cal. Rptr. 3d 32, 43 (2009).

Chicago Mechanical contends that, because the Mayers were in privity of contract with Chicago Mechanical, their claims are precluded by Moorman, which holds that economic losses are not ordinarily recoverable under tort theories. Moorman, 91 Ill. 2d at 86. " 'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits--without any claim of personal injury or damage to other property ***.' " Moorman, 91 Ill. 2d at 82, quoting Note, Economic Loss in Products Liability Jurisprudence, 66 Colum. L. Rev. 917, 918 (1966). Even if discomfort and inconvenience constitute an economic loss, the Moorman rule does not apply when there has been a sudden and calamitous occurrence that causes harm to property. In re Chicago Flood Litigation, 176 Ill. 2d 179, 199 (1997). We have held that, although mold growth may be gradual, when it manifests itself in a sudden and calamitous manner, damaging property and forcing the occupants of a home to flee or risk personal injury, a tort

action may be maintained. Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr., & Co., 349 Ill. App. 3d 178, 194 (2004).

Accordingly, it is not clear to us that either Rickey or Moorman forecloses plaintiffs' claims. Because, as previously noted, the issue before us appears to be one of first impression in Illinois, it is appropriate to consult secondary sources and decisions from other jurisdictions. We start with the Restatement (Second) of Torts; although it is not binding authority, we may look to it for guidance. See Eckburg v. Presbytery of Blackhawk of the Presbyterian Church (USA), 396 Ill. App. 3d 164, 169 (2009) ("In the absence of Illinois law, we often deem persuasive secondary sources, such as the Restatement (Second) of Torts").

Section 929(1) of the Restatement (Second) of Torts provides:

"(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

(b) the loss of use of the land, and

(c) discomfort and annoyance to him as an occupant." Restatement (Second) of Torts §929(1), at 544 (1979).

According to the comments to this section, "[d]iscomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests." Restatement (Second) of Torts §929(c), Comment e, at 546-47 (1979). In most cases,

such damages "will account for only a minor portion of the total damages recovered by a successful plaintiff." Kirk v. Pineville Mobile Homes, Inc., 172 W. Va. 693, 695, 310 S.E.2d 210, 213 (1983) (of total judgment of $54,000 relating to fire damage to plaintiffs' home, portion of the award representing damages for annoyance or inconvenience to plaintiffs--who were forced to live in a motel for eight weeks--was either $523 or $1,127).

During oral argument, Chicago Mechanical emphasized that, under the Restatement rule, compensation is available to one who experiences discomfort and annoyance "as an occupant." The result in Van Brocklin is consistent with that view. Arguably, so is the result in Hawkins, in which the defendant accidentally contaminated the plaintiffs' house with heating oil. Although the house itself was uninhabitable, the plaintiffs remained on their land, living in a rented trailer until a new house could be constructed. In McBride v. Dice, 23 Kan. App. 2d 380, 383, 930 P.2d 631, 633 (1997), it was held that the plaintiffs, who were displaced from their home while termite damage was repaired, could recover only pecuniary damages and were not entitled to compensation for inconvenience and discomfort during the period of repairs.

On the other hand, some courts have extended the rule to occupants who, like the plaintiffs here, have been driven from their homes. In Truelock v. City of Del City, 967 P.2d 1183 (Okla. 1998), the plaintiffs were forced to leave their house because of "constant flooding and sewage overflows," resulting from the defendant's negligence, that "made the house uninhabitable." Truelock, 967 P.2d at 1190. They rented a house two doors down from the one they vacated. The defendant argued that the plaintiffs were not " 'occupants' " of the damaged property and therefore could not recover damages for annoyance, discomfort, and inconvenience. Truelock, 967 P.2d at 1190. The Oklahoma Supreme Court reasoned that the record sufficiently established that the plaintiffs occupied

the home, because the inconvenience and discomfort they endured was incidental to an interference with their possessory interest in the property.  Truelock, 967 P.2d at 1190; accord McFadden v. Thompson-Starrett Co., 116 A.D. 285, 286, 101 N.Y.S. 467, 468 (App. Div. 1906) (where defendant's negligence rendered the house plaintiff rented uninhabitable and plaintiff's family and servants lived in a hotel for 63 days, it was proper to instruct jury that damages could be awarded for, inter alia, (1) the difference between the cost of the hotel suite and the rent for the house and (2) "the loss of comfort suffered by plaintiff and his family in consequence of defendant's negligent acts").

A rule strictly limiting damages for inconvenience and discomfort to cases where plaintiffs remain in their home or on their land might produce arbitrary results.  In Hawkins, for instance, the plaintiffs lived in a small rented trailer on their own land after their house became uninhabitable. Undoubtedly the plaintiffs in Hawkins suffered an appreciable deprivation while "scrunched" (Hawkins, 723 A.2d at 771) into the trailer.  But this would also have been true if the trailer had been located on the land of another, and in either case, the level of inconvenience and discomfort would arguably be comparable to living without running water in an otherwise habitable house (as the plaintiffs in Van Brocklin did).

Although the trailer in Hawkins may be an extreme example, as a practical matter temporary housing may often be a poor substitute for living in one's own home.  Short-term housing is not always in plentiful supply.  The available options may lack the space and facilities to which one is accustomed, and may also be located farther from work, school, and shopping.  Here, however, plaintiffs have largely ignored the practical effects of being displaced from their homes, instead focusing principally on the abstract sense of satisfaction associated with one's home.  Thus, in plaintiffs' view, "[s]leeping in one's own bed, bathing in one's own bathroom, cooking in one's own

kitchen, eating at one's table, etc., are among the most fundamental pleasures of life."  Their grievances, as described in the briefs, are similarly vague and subjective: they felt a sense of homelessness, and they did not like living out of a suitcase and having their normal living patterns disrupted.

In essence, plaintiffs' theory of damages is rooted more in the sentimental attachment to their homes than in the tangible comforts and conveniences of living in those homes.  At oral argument, plaintiffs' attorney contended that one's home is a unique environment for which there can be no substitute and that damages for discomfort and inconvenience are appropriate no matter how luxurious the alternative quarters might be.  By virtue of this reasoning, one could seek recompense for displacement without regard to his or her actual living conditions.  We cannot subscribe to such a sweeping view.  The type of harm for which plaintiffs seek recovery is simply too nebulous to serve as a basis for an award of damages.

Because plaintiffs have not advanced a viable theory of damages, Chicago Mechanical was entitled to judgment as a matter of law.  Thus, the trial court properly entered summary judgment on Emily Albrecht's claim.  See Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 390-91 (1993) (summary judgment "is an appropriate measure in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law").  Likewise, the trial court properly barred plaintiffs from proceeding with the remaining claims under an erroneous theory of damages.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.