## REBECCA GREEN *vs.* T. A. SHOEMAKER & CO.

*Nuisance—Blasting Rocks Near Plaintiff's Dwelling House—Right of Action by Tenant of Rooms—Recovery for Nervous Injury Caused by Fright Without Physical Impact.*

The blasting of rocks by explosives in the vicinity of one's dwelling house, which interferes with his health or comfort in the occupation of the property, is a nuisance for which he is entitled to maintain an action.

When a married woman rents rooms in her own name, paying the rent thereof and being entitled to exclusive possession, she may maintain an action to recover damages for the interference with her peaceable enjoyment of the premises, and her comfort, caused by the blasting of rocks in the vicinity, and for the destruction of her property caused by the concussions resulting from such blasting.

When material physical injury has resulted from fright, caused by defendant's wrongful act, an action lies to recover damages therefor; but no action lies to recover damages for mere fright which does not result in a physical injury.

During several months the defendants blasted rocks in the vicinity of plaintiff's dwelling house, which blasting hurled large stones on plaintiff's house and adjacent land, by day and night, breaking glass, doors, windows and the roof. This caused plaintiff to be in continual fear for her life, driving her often to take refuge in the cellar of the building, and subjecting her to violent and frequent vibrations. As a consequence, plaintiff's health, which had previously been good, was seriously impaired by the shocks to her nervous system, and she suffered afterwards from nervous prostration. *Held,* that this evidence is legally sufficient to authorize the jury to find that the plaintiff's nervous prostration was the proximate result of the alarm and fright to which she was subjected by the constant blasting; that this nervous disturbance was a physical injury, and that the plaintiff is entitled to recover damages therefor, although she was not actually struck by any of the falling stones.

The right of a person to recover damages for an illness or palpable injury resulting from nervous shock or fright caused by defendant's wrongful act, when there has been no physical impact, should not be denied merely on the ground that nervous disturbances are sometimes imagined and sometimes feigned, since a nervous injury arising from actual physical impact is as likely to be imagined as one resulting from fright alone, and the former may be simulated as well as the latter.

When a negligent act caused terror or dismay which itself, naturally, without an intervening cause, results in a physical injury, the wrongful act is the efficient cause of the injury and not the fright.

*Decided June 28th, 1909.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

·  *Edward M. Hammond* and *Z. Howard Isaac,* for the appellant.

*Wm. H. Harlan* and *John L. G. Lee,* for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an action by the appellant, a married woman, to recover damages for alleged injuries to her property and person, caused by the blasting of rocks by the defendants in the vicinity of her dwelling. She lived at Alberton in Howard County, about two hundred yards from the line of the B. & O. R. Co., and the defendants were contractors, who were engaged in extensive work upon the line of said railroad during the year 1906, which required the blasting of large quantities of rock by explosives.

The declaration contained four counts, and the first and second are substantially the same. They allege that at the time of the grievance complained of, the plaintiff, as tenant, was in possession of three certain rooms in a house belonging to Mrs. Annie McIlvaney, in which said three rooms the plaintiff resided, and to the exclusive possession of which she was entitled; that the defendants from about April 14th, 1906 to December, 1906, were engaged in blasting large quantities of rock near her said residence, and by means thereof caused large rocks and stones to be cast on the house in which she resided, and the lot of land appurtenant thereto, destroying doors, windows, sashes, and glass therein, breaking the roof and porches, and cracking the walls and ceilings of said house, and particularly of the three rooms occupied by the plaintiff; breaking the glass and china of the plaintiff and otherwise injuring her property, and wrongfully depriving her thus of the quiet and peaceable possession of said rooms as her dwelling. These two counts further alleged that in consequence of said blasting the plaintiff was struck and wounded by falling plaster and debris, "and was caused immediately by said blasting to be violently shaken and jarred, whereby she was greatly injured

physically * * * and her health has been greatly damaged and shattered, and her nervous system disordered, and she has suffered great physical pain in consequence, and has sustained severe and permanent physical injuries."

The third and fourth counts are substantially the same. These counts, after alleging the plaintiff's title to, and occupation of, said three rooms, and the blasting operations of the defendants, with the resulting damage to said dwelling and rooms, as set forth in the first and second counts, further alleged that, "immediately, and in consequence thereof, all persons on or about said premises, and those living in said rooms, including the plaintiff, were kept in continual fear and jeopardy of their lives, rendering a proper attention by the plaintiff to her duties full of fear and danger; and as a further consequence the plaintiff was wrongfully deprived of the quiet and peaceable possession of said rooms as her abode, and was frequently compelled, by day and by night, to seek shelter in the cellar; and that as a further consequence, the said dwelling, and the said plaintiff's rooms therein were subjected to incessant and violent vibrations, * * * and the plaintiff, and all other persons in said rooms, were subjected to frequent and violent physical jars, and that plaintiff's health has been thereby greatly damaged and shattered, and her nervous system disordered, and she has by reason suffered great physical pain and has sustained severe and permanent physical injuries."

The defendants filed the general issue pleas. The plaintiff testified that previous to 1901 she rented and occupied the same rooms as tenant of Mrs. McIlvaney, paying as rent three dollars a month; that in 1901 Mrs. McIlvaney's husband died, and she then went to work in a mill nearby; that plaintiff then agreed with Mrs. McIlvaney to take care of her children and do her house work while she was at the mill, and that her rent for the same rooms, at the same rate, should be paid for by said services instead of in money, as theretofore; that there was no community of interest or occupation of said house between Mrs. McIlvaney and the

plaintiff; that she had exclusive possession and control of her three rooms, and Mrs. McIlvaney of the residue of said dwelling; that Mrs. McIlvaney furnished the meals, prepared the same, and they were eaten in her part of the house, and the plaintiff's arrangement for her family was the same, and that all their household arrangements were separate and distinct.

She testified that the first blast was on April 14th, 1906; that it knocked nearly half the plastering from the wall of the room she was in, and part of the ceiling; none of it then fell on her, though some fell on Mrs. McIlvaney's child. It seemed to lift the house up and then let it fall. It broke every glass in the window except one. It threw the table upside down. It broke two dozen jars belonging to the plaintiff in the cellar of the house. On April 24th a stone burst through the roof and ceiling and came down through plaintiff's bed, mattress and spring, and broke the slats and rollers. It weighed 22 pounds. That blast tore the window sash out, broke some in two, and threw them across the room. They did not sleep in that bed for six weeks after that. This blasting kept up till the fall of 1906. They often had to leave their meals and run to the cellar, and were in terror all night of being killed. She had to sit up in a chair at night the best part of six weeks while they were blasting across the river. She said, "my nerves were completely broken down through fright, and I was not able to do my work. Before that time I was in ordinary health, and never was nervous. Since then I have had no health at all. Dr. Miller attended me for this nervousness, and he came every day during the latter part of April, and after that every week or so until fall."

Dr. Miller testified that he was her family physician before and after this blasting; that after April 14th plaintiff developed nervous prostration which he attributed to the shock of the blasting.

George Green, plaintiff's husband, testified that he worked for defendants at that time; that there was constant blast-

ing going on, and that in consequence his wife had become a nervous wreck; that she was thirty years of age, and before this blasting had always attended to all her household duties, but since then has been unable to do so.

On cross-examination he said: "As far as the renting of the house was concerned I did not think the house belonged to me. I did not have any jurisdiction over it. I bought the set of furniture to which the bed belonged 16 years ago. My two sisters lived with me and I collected $8.00 a month rent from them." It is quite plain, as the whole rent paid Mrs. McIlvaney was $3.00 a month, that the $8.00 per month paid George Green by his sisters, and which he called rent, must have been for their board which was supplied by him. Mrs. Harris, the former Mrs. McIlvaney, who had since married, testified that she was a sister-in-law of Mrs. Green and that the agreement in regard to the rent of her rooms was that "she was to take care of my children and do the work while I worked in the mill." She was then asked what Mrs. Green was to get for that, and she replied: "The use of the rooms she rented."

Mrs. Davis, Walter Oldfield and Hamilton Oldfield testified to the terrific blasting and the damage of the property.

Upon the close of the plaintiff's testimony the defendants moved to strike out all the evidence of the plaintiff's witnesses "bearing on the nervous condition and nervous shock to the plaintiff, and any physical injury resulting from such nervous shock, such testimony having been admitted subject to exception, because there is no evidence of any physical impact or corporal injury to the plaintiff." This motion was granted, and the first exception was taken to that ruling.

The defendants then prayed an instruction, "that under the pleadings and evidence in the case there is no evidence legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendants," and the second exception was taken to the granting of that instruction.

The' defendants having filed only the general issue plea to all the counts of the amended declaration, there is no question arising as to the form of the pleadings, and there are only two questions which it is necessary to consider:

1st. Can the plaintiff, upon the evidence which was admitted, recover damages for the interference with her quiet possession and enjoyment of the rooms occupied and rented by her?; and,

2nd. Does a cause of action lie for physical injury resulting from fright and nervousness caused by the wrongful acts of the defendants?

The evidence is undisputed that the rent for these rooms was always paid by the plaintiff and not by her husband, and that the agreement of renting was made by Mrs. McIlvaney with the plaintiff alone. We are of opinion that under the evidence, the plaintiff was not a mere lodger, the landlady retaining the legal possession of the whole house, but that she was a tenant entitled to the exclusive possession and control of the rooms she occupied. Blasting of rocks by the use of gunpowder or other explosives in the vicinity of another's dwelling house, is a nuisance, and the person doing the act, or causing it to be done, is liable for all injuries that result therefrom. *Wood on Law of Nuisances,* 153; 29 *Cyc.*, 1167; *Hay* v. *Cohoes,* 2 Comstock, 159; 2 *Greenleaf on Evidence,* sec. 254.

Each count in this declaration charges acts which constitute a public or common nuisance, and also discloses special injuries sustained by the plaintiff, recoverable in a private action. Among these special injuries were, that "all persons living in said rooms including the plaintiff were kept in continual fear and jeopardy of their lives rendering a proper attention by the plaintiff to her duties full of fear and danger." This is the same allegation made in the *narr.* in *Scott* v. *Bay,* 3 Md. 431, which was a case of blasting, and in which the Court said, damages for such injuries were recoverable in case. In *Webb's Pollock on Torts,* the author says: "The conception of private nuisance was formerly lim-

ited to injuries done to a man's freehold by a neighbor's acts, of which stopping or narrowing rights of way and flooding land by the diversion of water courses appear to have been the chief species. In the modern authorities it includes all injuries to an owner or occupier in the enjoyment of the property of which he is in possession, without regard to the quality of the tenure." The same author, on page 494, says: "The kind of nuisance which is most commonly spoken of by the technical name, is the continuous doing of something which interferes with another's health or comfort, *in the occupation of his property,* such as carrying on a noisy or offensive trade." The general rule of the common law is that every action must be brought in the name of the party whose legal right has been invaded or infringed. 15 *Enc. Pl. & Pr.,* 484. For the immediate wrong and damage the person injured is the only one who can maintain the action. *Idem,* 578. "The person who sustains an injury is the person to bring an action for the injury against the wrongdoer." *Dicey on Parties,* 347.

We think this action was properly brought by the plaintiff. Even if no other damage were shown, than the breaking of the two dozen jars which were her personal property she would be entitled to at least nominal damages which would carry costs.

In *Hazard Powder Co.* v. *Volger,* 7 C. C. A. 130, a husband, Schultze Volger, sued the Hazard Powder Co. alleging that it maintained a powder magazine, in violation of a city ordinance and that its explosion wrecked his house, and injured his wife. His house was erected on the land of another under a license. He gave up his position to nurse his wife, and it was held that peaceable possession was evidence of his right to maintain the action without regard to title. It was also held that he could recover for the loss of his wife's services, and the value of his own services as a nurse, that is, what would have been the reasonable cost for a hired nurse. The wife, also brought a separate suit to recover for own personal injuries, and did recover. It does

not appear from the report of the case what was the character of her injuries, and these cases are only cited to show that separate recoveries were there allowed. It follows from what we have said that it was error to grant the defendant's prayer which absolutely withdrew the case from the jury.

This brings us to the important question involved in the granting of the motion to strike out all the testimony bearing on nervous shock to the plaintiff, and physical injury resulting therefrom. There is a wide divergence of judicial opinion as to whether a cause of action will lie for actual physical injuries resulting from fright and nervous shock caused by the wrongful acts of another, and it may be considered as settled, that *mere fright, without any physical injury resulting therefrom,* cannot form the basis of a cause of action. This is so, because mere fright is easily simulated, and because there is no practical standard for measuring the suffering occasioned thereby, or of testing the truth of the claims of the person as to the results of the fright. But when it is shown that a *material physical injury* has resulted from fright caused by a wrongful act, and especially, as in this case, from a constant repetition of wrongful acts, in their nature calculated to cause constant alarm and terror, it is difficult, if not impossible, to perceive any sound reason for denying a right of action in law, for such physical injury.

The grounds upon which those Courts have proceeded which deny such right, are two-fold: "1st, that physical injury produced by mere fright caused by a wrongful act, is not the proximate result of the act; and 2nd, that upon the ground of expediency, the right should be denied, because of the danger of opening the door to fictitious litigation, and the impossibility of estimating damages." *Huston* v. *Freemansburg,* 3 L. R. A. New Series, page 50, Editor's note.

As to the first of these grounds, this Court has laid down in clear language the true doctrine upon this question in *Balt. City Passenger Railway Co.* v. *Kemp,* 61 Md. 80. In that case, the Court, speaking through JUDGE ALVEY, said:

"It is not simply because the relation of cause and effect may be somewhat involved in obscurity, and therefore difficult to trace, that the principle obtains that only the natural and *proximate* results of a wrongful act are to be regarded. *It is only where there may be a more direct and immediate sufficient cause of the effect complained of, that the more remote cause will not be charged with the effect.* If a given effect can be directly traced to a particular cause, as the natural and proximate effect, why should not such effect be regarded by the law, even though such cause may not always, and under all conditions of things, produce like results? It is the common observation of all, that the effects of personal physical injuries depend much upon the peculiar conditions and tendencies of the person injured; and what may produce but slight and comparatively uninjurious consequences in one case, may produce consequences of the most serious and distressing character in another. * * * Hence, the general rule is, in actions of tort like the present, that the wrongdoer is liable for all the direct injury resulting from his wrongful act, and that too, although the extent or special nature of the resulting injury could not, with certainty, have been foreseen or contemplated as the probable result of the act done."

In the case now before us the evidence does not suggest any other cause of the effect complained of. It is a matter of common knowledge or observation that loud explosions, even if unattended by any immediate special dangers, are very trying to the nerves of those subjected to them. This is especially so when such explosions are constantly repeated, as in blasting, and are accompanied by the hurling about of rocks and stones displaced by the blast, to the danger of property and life. It is equally a matter of common knowledge that as a general rule, the nerves of women are more sensitive to injury than those of men, are more easily disturbed, and that when so disturbed, the injurious consequences are more serious and lasting.

Here is a young woman, thirty years of age, in sound health and free from any nervous disorder or tendency. She is subjected to a long continued series of terrific blastings near her dwelling, shattering the roof, walls, and windows, by day and by night, and in the language of the declaration "putting her in continual fear and jeopardy of her 'life." In the absence of any evidence of any other cause, why then may not her nervous prostration be traced by the jury, under the principles stated by JUDGE ALVEY, to the one cause shown to exist, viz, the alarm and terror under which she was forced to live? In the case just cited there was a motion for a reargument, based as the Court stated, upon authorities that were not brought to the attention of the Court upon the former hearing, but the motion was overruled, the Court saying: "Whether the direct causal connection exists, is a question, in all cases, for the jury, upon the facts in proof."

In *Sloane* v. *Southern Cal. R. R.,* 111 Cal. 668, a case similar to the present, in that there was no physical impact, the Court said: "The real question presented by the objections and exception of the appellant, is, whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind. * * * The nerves and nerve centres of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves, or the entire nervous system are thus affected, there is a physical injury thereby produced; and if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect, through some action upon the mind."

If, in the case before us, the plaintiff had received an actual blow, however slight, either from a rock hurled by the blast, from the falling of a wall or ceiling, or even by a fall of herself, caused by the alarm of the concussions, no one would question her right to maintain this action, nor the right of the jury to consider the nervous prostration from which she is suffering, in ascertaining the damages to be awarded. If,

therefore, the jury had believed from the evidence which was stricken out, that the nervous prostration of the plaintiff was the natural and proximate consequence of the alarm and terror to which she was subjected by the constant blasting, it would properly have formed an element for their consideration in reaching their verdict. For these reasons we do not think the question of proximate cause *in this case* justified the striking out of the testimony bearing upon the nervous shock and the resulting physical injury, nor in the withdrawal of the case from the jury.

We come now to the question of expediency. It appears from an examination of the cases in which the right of recovery has been denied where there has been no physical impact, that this doctrine has been the controlling one with the Court. This is especially apparent in the Pennsylvania and Massachusetts decisions. In *Huston* v. *Freemansburger,* 212 Pa. 548, the Court dealt only with that question, and said: "If we opened the door to this new *invention,* the result would be great danger, if not disaster, to the cause of practical justice." In *Homans.*v. *Boston Elevated R. W. Co.,* 180 Mass. 456, CHIEF JUSTICE HOLMES said, referring to the rule established in that Court: "As has been explained repeatedly, it is an *arbitrary* exception, based upon a notion of what is practicable, that prevents a recovery for visible illness resulting from nervous shock alone. * * * We must recognize the logic in favor of the plaintiff when a remedy is denied, because the only immediate wrong is a shock to the nerves." At the trial below, the defendant, by various requests, tried to press the principle so far as to require the plaintiff to prove that the nervous shock was the immediate consequence of a slight blow received by being thrown forward against a seat, whereas the judge allowed her to recover for the nervous shock ending in paralysis, if it resulted from a jar to her nervous system which accompanied the slight blow to her person. In other words, the Court held that *it was not necessary to show that the shock was the consequence of the blow,* and JUDGE HOLMES said: "We are of opinion the Judge was cor-

rect, and that further refining would be wrong." This case
well illustrates the difficulty felt by the Court in denying a
recovery upon the ground of expediency, without withhold-
ing from the plaintiff a legal right. The argument from
mere expediency cannot commend itself to a Court of justice,
resulting in the denial of a logical legal right and remedy in
*all cases,* because in *some* a fictitious injury may be urged as
a real one. The *apparent* strength of the theory of expedi-
ency lies in the fact that nervous disturbances and injuries
are sometimes more imaginary than real, and are sometimes
feigned, but this reasoning loses sight of the equally obvious
fact that a nervous injury arising from actual physical im-
pact is as likely to be imagined as one resulting from fright
without physical impact, and that the former is as capable of
simulation as the latter.

It must be conceded that the numerical weight of author-
ity supports the general rule that there can be no recovery for
nervous affections unaccompanied by contemporaneous phys-
ical injury, but the sounder view, in our opinion, is, that there
are exceptions to this rule, and that where the wrongful act
complained of is the proximate cause of the injury, within the
principles announced in *Kemp's Case, supra,* and where the
injury ought, in the light of all the circumstances, to have
been contemplated as a natural and probable consequence
thereof, the case falls within the exception and should be left
to the jury.

In England, in *Victorian Railway Commissioners* v. *Coul-
tas,* L. R. 13 App. Cases, 222, the Court held that damages
arising from mere terror unaccompanied *at the time* by any
physical injury, could not be considered as a consequence of
the wrongful act there complained of, although the Court re-
fused to decide that in no case could recovery be had without
proof of actual impact.

In *Bell* v. *Great Northern R. Co.,* Irish L. R. 26 Eq. 428,
the Court refused to follow the case just mentioned, saying
that where no intervening independent cause of the injury
was suggested, and where the jury could find that the bodily

injury complained of was a natural consequence of the fright, the chain of reasoning for recovery was complete.

These cases are reviewed in 1 *Beven on Negligence,* 2nd Edition, pages 76-83, and the doctrine of the former is criticised with much force and discrimination.

In *Watkins* v. *Kaolin Manufacturing Co.,* 131 N. C. 536, the action was brought to recover damages for injury to the nerves resulting from blasting near the plaintiff's dwelling, though there was no external physical impact. It was held that an allegation that plaintiff became so nervous and frightened from the negligent and reckless blasting by the defendant, that she could not sleep at night, and was greatly disturbed in body and mind, stated a good cause of action for physical injury; and it was held that an action will lie for physical injury or disease resulting from fright or nervous shocks caused by negligent acts.

In *Denver R. R.* v. *Roller,* 100 Fed. Rep. 738, the jury was instructed as follows: "If great fright was a reasonable and natural consequence of the circumstances in which the collision aforesaid, with the ensuing wreckage, explosion and conflagration, placed the plaintiff, and if she was actually put in fright by those circumstances, and injury to her health was a reasonable and natural consequence of such fright, and was actually and proximately occasioned thereby, then said injury is one for which damages are recoverable."

The reasoning upon which that conclusion was reached is, in our opinion sound, and it is in accord with the views expressed in *Sedgwick on Damages,* 8th Ed., sec. 861, *Addison on Torts,* 5 and 3 *Sutherland on Damages,* 714-715.

The same view was held in *Tuttle* v. *Atlantic City Railway Co.,* 66 N. J. L. 327, 54 L. R. A. 584, in *Watson* v. *Dilts,* 116 Iowa, 249, in *Mack* v. *Southbound R. R.* (S. C.), 40 L. R. A. 679, in *Purcell* v. *St. Paul City R. W. Co.,* 48 Minn. 134, in *Gulf, Col. and Santa Fe R. W. Co.* v. *Hayter,* 93 Tex. 239, and in *Consolidated Tracton Co.* v. *Lambertson,* 59 N. J. L. 297.

It may be observed here that there is a class of cases in which Courts which generally sustain the contrary rule seem not to require contemporaneous physical injury in order to sustain a recovery for fright and its consequences.

In *Spade* v. *Lynn R. R.*, 168 Mass. 285, where a recovery was denied, the Court said: "We do not include cases of acts done with gross carelessness or recklessness showing utter indifference to such consequences when they must have been in the actor's mind."

In *Nelson* v. *Crawford*, 122 Mich. 466, it is intimated that the rule does not reach those cases where there is an intention to cause mental distress. And in *Wilkinson* v. *Downton* (1897), 2 Q. B. 57, it was expressly so held, where a practical joke resulted in fright producing a miscarriage. In the case before us, the evidence is that the defendants were notified of the injury to the house, and they made some repairs but that the blasting continued thereafter and during all the summer with the same results. This would seem to come fairly within the description of gross recklessness as to consequences, and thus to bring the case within that exception.

In view of all the circumstances of this case, we cannot apply to it the rigid rule applied in some Courts, requiring actual cotemporaneous physical impact producing physical injury, and we are of opinion that the case should have gone to the jury upon the principles announced in *Denver R. R.* v. *Roller*, *supra*.

It will be for the Court in future cases of this character, as in all other cases where the questions of proximate cause and legally sufficient evidence arise, to permit no recovery except upon the application of the principles just mentioned, while denying none upon the ground of *mere expediency,* where these principles logically require the submission of the case to the jury.

> *Judgment reversed with costs to the appellant above and below, and new trial awarded.*