*Smith v. Sheehan*, No. 2417, September Term, 2023. Opinion by Nazarian, J.

**DAMAGES – PHYSICAL ILLNESS, IMPACT, OR INJURY; ZONE OF DANGER**

In the absence of a physical impact or injury directly resulting in harm, mental and emotional injuries, such as fright, are not compensable unless there are objective manifestations of such injury.

**DAMAGES – PHYSICAL ILLNESS, IMPACT, OR INJURY; ZONE OF DANGER**

As long as the emotional distress due to tortious conduct is manifested objectively, the emotional distress is genuine and compensable in damages even though the tortious conduct did not cause bodily harm.

**DAMAGES – PHYSICAL ILLNESS, IMPACT, OR INJURY; ZONE OF DANGER**

Damages for emotional distress or mental anguish are recoverable provided that they are proximately caused by the wrongful act of the defendant and it results in a physical injury or is capable of objective determination.

**DAMAGES – PHYSICAL ILLNESS, IMPACT, OR INJURY; ZONE OF DANGER**

An actor responsible for wrongful, negligent act is liable for all proximately caused emotional distress experienced by the tort victim; wrongful conduct need only proximately cause the emotional distress or mental anguish, independent of the physical injuries, and the mental disturbance need not result from physical injury.

**JURY INSTRUCTIONS—PRE-IMPACT FRIGHT**

The pre-impact fright jury instruction was generated by the evidence, specifically the plaintiff's awareness of the impending second collision and the physical manifestations of that emotional distress, was a correct statement of the law, and was not covered adequately by other instructions, and the trial court erred by not giving the instruction to the jury.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2417

September Term, 2023
_____

DAMALI OKERA SMITH

v.

DYLAN GOODROW SHEEHAN
_____

Nazarian,
Albright,
Sharer, J. Frederick
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Nazarian, J.
_____

Filed: August 27, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Damali Smith was injured when Dylan Sheehan crashed his vehicle into the back of hers and caused it to spin into a second collision, this time with a guardrail. At trial, Ms. Smith asked the Circuit Court for Baltimore County to instruct the jury on pre-impact fright damages for the fear she experienced after the first but before the second impact. The court declined to give the pre-impact fright instruction, reasoning that pre-impact fright applied only to the first impact, which she hadn't seen. The jury returned a verdict of $5,000 in noneconomic damages for Ms. Smith. She appeals and we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

On a snowy morning, January 31, 2021, Ms. Smith was heading to York, Pennsylvania, in a silver Acura MDX to pick up two of her children. As she got on the road she expected snow, but she wanted to get her children before "the snow got bad." As she started driving, though, the snow got heavier. She was cautious with her speed and drove slowly since the roads were untreated and "slushy." At some point, as she looked through her rearview mirror and all that she "could see was white," but she didn't see anyone behind her. While trying to register what she was seeing, she felt a sudden impact and her car "started to just spin." The car gyrated until it collided with a guardrail. Her airbags deployed.

Yvonne Tarnue, another driver on Interstate 83 North that day, observed the collision. Like Ms. Smith, she drove slowly, conscious that other drivers were driving cautiously due to the snow. Suddenly, she noticed that one driver approaching from behind

in a white van was driving "really, really fast." The driver was in the same lane as she was, so she moved over to another lane, thinking that the driver would crash into her. After she moved over, she noticed that the van driver also tried to weave out of the lane. The van then crashed into Ms. Smith's vehicle "in the back and side," causing it to spin out.

Ms. Tarnue rushed over to Ms. Smith's vehicle. She saw that Ms. Smith's airbags had deployed and that Ms. Smith had her head down. With the help of another driver who had seen the crash and stopped to help, Ms. Tarnue attempted to wake Ms. Smith. As that driver approached, he was already on the phone with emergency services. He used a knife to pry the door open and cut the seatbelt and airbags. He and Ms. Tarnue extracted Ms. Smith from the car.

Mr. Sheehan was the driver of the white van. He had blood on his face and attempted to approach Ms. Smith, but Ms. Tarnue and the other driver kept him back. Moments later, an ambulance arrived and transported Ms. Smith to Sinai Hospital. At the hospital, she complained of pain on the whole left side of her body as well as pain in her head, chest, both legs, shins, hips, and her upper back. She was discharged approximately twelve hours later after receiving a muscle relaxer and advice to obtain over-the-counter painkillers. The hospital informed her that her pain would worsen, so Ms. Smith attempted to see her primary care physician, Dr. Rodetta Morris, in person, but couldn't because of COVID-19 restrictions.

Ms. Smith visited Connie Do, a chiropractor at Maryland Health Care, for physical therapy ten days after discharge from the hospital. She complained of headaches, shoulder pain, hip pain, upper and lower back pain, and abrasions on her legs. Doctor Do's treatment

plan included electronic stimulation and hot and cold treatments. Ms. Smith's physical therapy lasted three months, comprising approximately sixteen to seventeen visits to Maryland Health Care.

### B. Procedural Background

Ms. Smith filed a complaint for negligence against Mr. Sheehan on October 13, 2022. Mr. Sheehan answered on November 23, 2022, and the parties proceeded to trial before a jury, which lasted two days, February 13 and 14, 2024. At trial, the jury heard testimony from Ms. Tarnue, Dr. Do, whom the court admitted as an expert on chiropractic medicine, and Ms. Smith. The court also received various exhibits from both parties into evidence.

Before instructing the jury, the court informed Ms. Smith that it would reject her request to instruct the jury on pre-impact fright. Then came the instructions. The court instructed the jury that the parties had agreed that Mr. Sheehan was responsible for causing the accident on January 31, 2021. The court then instructed the jury on damages, then paused to hear the parties' arguments for and against other jury instructions. One of the arguments concerned pre-impact fright. Ms. Smith argued that the instruction applied and that the court should give the instruction to the jury. The court disagreed, ruling that because there were two impacts in this case, pre-impact fright could only apply to the initial impact, when Mr. Sheehan collided with Ms. Smith, and the court had only heard Ms. Smith testify about her fear of crashing into the guardrail, the second impact. In the court's view, her testimony that she didn't see Mr. Sheehan before he crashed into her meant that there was no pre-impact fright in this case. The court permitted Ms. Smith to argue about

her emotions during the event, including her fear of the imminent second impact. Ms. Smith clarified that the pre-impact fright instruction she sought was aimed at that second impact. The court declined again to charge the jury on pre-impact fright and the parties gave their closing arguments.

Later that second trial day, the jury returned its verdict: it found Mr. Sheehan to be the proximate cause of Ms. Smith's injuries and awarded Ms. Smith $5,000 in non-economic damages. The court entered judgment on February 16, 2024, and Ms. Smith appealed on February 22, 2024. We supply additional facts as necessary below.

## II. DISCUSSION

Ms. Smith argues *first* that the circuit court abused its discretion by failing to instruct the jury on pre-impact fright. She argues *second* that the court's refusal to provide this instruction was not harmless and prejudiced her unfairly. Mr. Sheehan responds that the court didn't abuse its discretion in denying her request for a pre-impact fright jury instruction, and even if it did, she did not suffer any prejudicial harm as a result. We agree with Ms. Smith and reverse.

The circuit court must "'give a requested instruction that correctly states the applicable law and that has not been fairly covered in other instructions.'" *Six Flags America, L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569, 589 (2020) (*quoting Fleming v. State*, 373 Md. 426, 432 (2003)). In civil cases, a legal error in a jury instruction, by itself, does not mandate reversal. *Id.* "'To overturn a jury verdict, a jury instruction must not only be incorrect legally, but also prejudicial,'" and that prejudice must not just be "'possible, but probable, in the context of the particular case.'" *Id.* (*quoting Armacost v. Davis*, 462

4

Md. 504, 524 (2019)). "'When we review a trial court's grant or denial of a requested jury instruction, we apply the highly deferential abuse of discretion standard.'" *Id.* at 588 (*quoting Woolridge v. Abrishami*, 233 Md. App. 278, 305 (2017)). We consider three factors when determining whether the court in that instance abused its discretion: "'(1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given.'" *Id.* at 589 (*quoting Woolridge*, 233 Md. App. at 305).

**A.**      **Because Pre-Impact Fright Applied To The Second Collision, The Circuit Court Abused its Discretion By Failing To Instruct The Jury On Ms. Smith's Pre-Impact Fright.**

    *1.*     *The pre-impact fright jury instruction was a correct statement of the law*.

*First*, we examine the pre-impact fright instruction that Ms. Smith requested: "In this case, you shall consider what, if any, damages should be awarded to the plaintiff for the emotional distress and mental anguish that the plaintiff suffered between the time the plaintiff realized that there would be an accident and the accident." MPJI-Cv 10:10. Ms. Smith submitted the instruction to the circuit court. Was this a correct statement of the law?

It was. The instruction recited nearly identically the petitioner's argument in the case that the jury instruction includes in its comments. *Compare Beynon v. Montgomery Cablevision Ltd. P'ship*, 351 Md. 460, 465–66 (1998) (phrasing petitioner's argument as seeking compensation for "'pre-impact fright'—the mental anguish the decedent suffered from the time he became aware of the impending crash until the collision"), *with* MPJI-Cv 10:10 ("[C]onsider what, if any, damages should be awarded to the plaintiff for the

5

emotional distress and mental anguish that the plaintiff suffered between the time the plaintiff realized that there would be an accident and the accident."). In *Beynon*, our Supreme Court held that damages for pre-impact fright were compensable. The core legal point is not in dispute, the instruction is an accurate statement of the law, and Mr. Sheehan doesn't argue otherwise.

> 2. *Pre-impact fright was applicable under the facts of Ms. Smith's case.*

*Next*, we assess whether the evidence before the jury generated the issue of pre-impact fright. Before instructing the jury, the court informed the parties that it would not instruct the jury on pre-impact fear because the court believed that the "impact is the impact in the case and not impacts that occur after the initial impact." While instructing the jury, the court called counsel to the bench to discuss pre-impact fright. After hearing Ms. Smith's arguments, the court declined to instruct the jury on pre-impact fright, reasoning that there were two impacts and the pre-impact fright instruction could apply only to the first:

> THE COURT: All right. My ruling on pre-impact fright was as follows. Counsel, all the testimony from [Ms. Smith] regarding all the things that she had experienced after the impact, whether her car was spinning, her fear was going into oncoming traffic, striking the guardrail, all of that testimony you can argue to the jury, but the pre-impact fright instruction I did not give because I read pre-impact fright to relate to the impact itself. That is, the impact of [Mr. Sheehan's] vehicle with [Ms. Smith's] vehicle. There is no testimony in this case that [Ms. Smith] ever saw [Mr. Sheehan's] vehicle before it struck her vehicle. That is the impact I believe the pre-impact fright instruction goes to.

Pre-impact fright can, however, apply to a second impact in a two-impact collision.

6

### a. Pre-impact fright arises from Maryland jurisprudence on emotional distress.

At bottom, "recovery of damages for emotional distress must arise out of tortious conduct." *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 350 (2013), *reconsidered in part on other grounds*, 433 Md. 502 (2013). Since 1909, Maryland has recognized that fright or emotional distress injuries resulting from the commission of a tort may be compensable, even in the absence of a physical impact. *Green v. T.A. Shoemaker & Co.*, 111 Md. 69, 77, 81–83 (1909). Our Supreme Court recognized that although at that time some jurisdictions were cautious about, and indeed had rejected, a cause of action for mere fright without a physical impact, *id.* at 77, Maryland charted a different path. *Id.* at 81. Those jurisdictions were concerned with parties who feign fear, as fear is easily simulated, *id.*, but our Court recognized that such "reasoning loses sight of the equally obvious fact that a nervous injury arising from actual physical impact is as likely to be imagined as one resulting from fright without physical impact, and that the former is as capable of simulation as the latter." *Id.*

The sounder rule, the Court held, is that if "a wrongful act complained of is the proximate cause of the injury . . . and where the injury ought, in the light of all the circumstances, to have been contemplated as a natural and probable consequence thereof, the case . . . should be left to the jury." *Id.* at 81. And so in Maryland, "where a material physical injury has resulted from fright caused by a wrongful act . . . calculated to cause constant alarm and terror, it is difficult, if not impossible, to perceive any sound reason for denying a right of action in law, for such physical injury." *Id.* at 77.

In this context, "the term 'physical' is not used in its ordinary dictionary sense."

7

*Vance v. Vance*, 286 Md. 490, 500 (1979). "Instead, it is used to represent that the injury for which recovery is sought is capable of objective determination." *Id.*; *see Bowman v. Williams*, 164 Md. 397, 404 (1933) (physical injury must be "clearly apparent and substantial physical injury, as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state"); *Wheeling v. Selene Fin. LP*, 473 Md. 356, 395 (2021) ("[A]nalytically, the accompanying physical injury 'had more to do with *proving*, rather than defining, this kind of injury.'" (*quoting Hoffman v. Stamper*, 385 Md. 1, 35 (2005))). "Thus, as long as the emotional distress due to the tortious conduct is manifested objectively, the emotional distress is deemed genuine and compensable even though the tortious conduct did not cause bodily harm." *Albright*, 433 Md. at 350–51.

In *Hunt v. Mercy Medical Center*, 121 Md. App. 516 (1998), we described in greater detail what an objective determination requires:

> First, in order for an injury to be capable of objective determination, the evidence must contain more than mere conclusory statements, such as, "He was afraid," or, "I could see that he was afraid." The evidence must be detailed enough to give the jury a basis upon which to quantify the injury. Second, a claim of emotional injury is less likely to succeed if the victim is the sole source of all evidence of emotional injury . . . . This phenomenon may be a purposeful bulwark against feigned claims or it may simply flow from the need for objective rather than subjective determinations. It need not be an absolute bar to recovery, however . . . . There is no reason why the victim's own testimony may not be sufficient, as long as it otherwise provides the jury with enough information to render his or her injuries capable of objective determination. Third, although minor emotional injuries may be less likely to produce the kind of evidence that renders an injury capable of objective determination, that does not mean that an emotional

8

> injury must reach a certain threshold level of severity before it becomes compensable. There is no severity prong . . . . Our focus thus is properly on the evidence of mental anguish produced and not on the nature of the act causing the injury, the foreseeability of mental anguish therefrom, nor on the likely severity of such foreseeable anguish.

*Id.* at 531. The "objective and demonstrable physical injury requirement achieves a primary purpose of emotional distress damages: to compensate plaintiffs for actual harm, rather than feigned or speculative injury." *Albright*, 433 Md. at 361.

Pre-impact fright flows from this notion of injury. In *Beynon*, our Supreme Court first recognized pre-impact fright in survivorship cases. 351 Md. at 463–64. There, Montgomery Cable Vision Limited Partnership ("MCVLP") had obtained a permit to have the traffic on the Interstate 495 Beltway stopped, so that MCVLP could repair one of its utility poles. *Id.* at 464. One of the stopped vehicles on the beltway was a tractor-trailer. *Id.* The decedent was traveling westbound on that same beltway when he became aware that he was about to crash into the tractor-trailer's rear. *Id.* at 464–65. He reacted by slamming his brakes, causing 71½ feet of skid marks, but he was unable to avoid the collision and died on impact. *Id.* at 465. At trial, the decedent's estate established the negligence of the defendants (MCVLP, the tractor-trailer's driver, its owner, and insurer), *id.* at 466, and that the decedent was about 192 feet from the trailer when he noticed it and attempted to avoid the crash by slamming on his brakes, which created the skid marks. *Id.* at 465.

The Supreme Court held that the estate could be compensated for the decedent's pre-impact fright. *Id.* at 507–08. Applying *Green v. T.A. Shoemaker & Co.*, 111 Md. 69 (1909) and its progeny, the Court reasoned that the physical injuries that accompanied the

9

decedent's pre-impact fear were his fatal injuries. That fear was capable of objective determination, as seen in the skid marks before the crash. *Id.* at 507. The Court clarified that the damages were limited to the decedent's fright, not the resulting death, and limited to the time window beginning when the decedent became aware of the impending collision and ending with his death. *Id.* at 507–08. The Court found it "illogical" to forbid pre-impact fright damages because the purpose of survival statutes is for an estate to bring an action the decedent could have brought if they hadn't died, and the decedent would have been able to recover damages for that same fear if he had survived. *Id.* The Court reasoned that the jury could apply the same analysis that governs non-economic harms in other tort cases, such as assaults. The plaintiff's evidence need only create a reasonable inference that the decedent experienced the fear, and the Court concluded that on the record before it in *Beynon*, the jury could have made that inference from the skid marks. *Id.* at 508.

*Smallwood v. Bradford*, 352 Md. 8 (1998), presented a similar situation. There, the decedent was traveling on Maryland Route 90 when he was killed instantly in a car crash. *Id.* at 11. A witness observed the crash and testified at trial that as the decedent was traversing the road, the appellee, approaching from opposing traffic, crossed the center line, and struck his vehicle. *Id.* The decedent had attempted to avoid the crash by veering his vehicle toward the highway's shoulder. *Id.* But because of "'the angle that [the appellee's] car had on [the decedent's car],'" the appellee crashed into and side-swiped virtually the entire driver's side of the decedent's vehicle. *Id.* at 12.

The Supreme Court held that the circuit court should have given the pre-impact fright jury instruction to the jury. *Id.* at 19. Relying on *Beynon*, the Court reiterated that

10

"damages for pre-impact fright and mental anguish may be recovered in survivorship actions." *Id.* at 15. On the facts in *Smallwood*, the Court reasoned that a jury could infer that the decedent suffered great emotional and mental distress in the time before the collision. *Id.* at 18. The decedent suffered physical injuries from the crash, which had been caused by the appellee's negligence, and the fear was capable of independent objective determination because the decedent attempted to avoid the collision. *Id.* at 19. Notably, the Court relied on the eyewitness's testimony about the decedent's attempted defensive maneuvers, which served "the same function as the 71½ feet of skid marks in *Beynon*"; those attempted maneuvers served as the measure to use in determining the extent of the injuries, and as proof that the fear was not feigned. *Id.* The decedent's estate could argue, then, that the fright was objectively determinable because the decedent's defensive maneuvers were an apprehension of his impending death and the eventual physical impact. *Id.*

Both cases recognize that had the decedent survived, they would have been able to recover for their pre-impact emotional distress. *Beynon*, 351 Md. at 508 ("[T]here is no question that, had he lived, the decedent would have been permitted to recover damages for the 'pre-impact fright' he suffered before crashing into [the] rear of the tractor-trailer."); *Smallwood*, 352 Md. at 18 (*quoting* same). And this Court reiterated this principle in *Hendrix v. Burns*, 205 Md. App. 1 (2012), a case Mr. Sheehan cites. In *Hendrix*, the appellee, traveling southward, approached an intersection that had a red light, but failed to stop and drove right through the intersection. *Id.* at 9. Perpendicular to him was the traffic driving eastward, which had a green light. *Id.* The appellant was one of the drivers traveling

11

eastward. *Id.* The appellee struck the rear on the driver's side of the appellant's vehicle, causing it to "spin around at least once and almost hit another vehicle head-on." *Id.* Relying in part on *Beynon*, the appellant argued that she suffered emotional distress from the accident after learning that the appellee had a drunk driving history and that he had just fled a road rage incident before crashing into her. *Id.* at 31–33. We held that the appellant was permitted to recover damages for fright she endured during the time her car spiraled, which included any distress she had about potentially dying from the collision, but because she never saw the appellee's vehicle before the impact, she couldn't recover damages for pre-impact fright. *Id.* at 32–33. *Beynon* turned on whether recovery was available for fear experienced *before* impact, whereas *Hendrix* turned on whether recovery was available for fear experienced afterwards and, crucially, upon learning of negative information about the tortfeasor. *Id.*

In that case, we also noted that the Restatement (Second) of Torts § 456, cmt. e (Am. L. Inst. 1965), refers to pre-impact fright, stating that "one who is struck by a negligently driven automobile and suffers a broken leg may recover not only for his pain, grief, or worry resulting from the broken leg, *but also for his fright at seeing the car about to hit him.*" *Hendrix*, 205 Md. App. at 33 (*quoting* Restatement (Second) of Torts § 456, cmt. e (Am. L. Inst. 1965)). But nothing in the Restatement nor the cases that follow limits the fright the victim suffers to a single impact. So long as the claimant establishes that their distress was capable of objective determination, *Beynon*, 351 Md. at 505, that the distress occurred within the "'legitimate window of mental anxiety,'" *id.* at 507 (*quoting Faya v. Almaraz*, 329 Md. 435, 459 (1993)), and that the tortfeasor's negligence proximately

12

caused the claimant's emotional distress, *Green*, 111 Md. at 78, a trial court should instruct the jury on the claimant's pre-impact fright damages.

Those criteria were all met here.

        b.      <u>The pre-impact fright damages here were not limited to the first impact.</u>

Ms. Smith's pre-impact fear—her fear ahead of the second impact—was capable of objective determination. She testified that as her vehicle started spinning, she "was screaming" and "was scared." She had "no control in trying to stop" the car. She began to pray and thought that she was "going to die." This experience came in response to the force with which Mr. Sheehan hit her and the car's resulting revolutions—her car "was spinning out of control and [she] didn't know where it was going to stop." She also didn't know if she would smash into the oncoming traffic or fall into a ditch. And because of that same force, Ms. Smith thought that she might "break the guardrail." In addition, she suffered bodily injuries, of which she complained both in the emergency room at Sinai Hospital and to Dr. Do.

Although we have said that a victim's recollection of the injury may not be enough on its own for an objective determination, it may be sufficient "as long as it otherwise provides the jury with enough information to render [the victim's] injuries capable of objective determination." *Hunt*, 121 Md. App. at 531. Here, in addition to her testimony about her fear and injuries, Ms. Smith testified about her defensive maneuvers. While her car spun out, she tried "to remember what you are supposed to do if you get hit. . . . So [she] was trying to — trying to figure out how to hold [the] wheel or go with the flow of

the spin." Although more prominent in *Beynon* and *Smallwood*, defensive maneuvers in those cases helped the jury infer the decedent's fright. *See Beynon*, 351 Md. at 508–09 (jury could infer decedent's awareness of impending crash due to his sudden braking that caused 71½ feet of skid marks); *see also Smallwood*, 352 Md. at 11, 19 (jury could infer decedent's fright given evidence of decedent's attempts to avoid crash by veering toward highway's shoulder). Ms. Smith's testimony about her fear, her bodily injuries, and her attempts to avoid a collision could allow a juror to infer reasonably that she was afraid of the impending crash into the guardrail.

Ms. Smith's legitimate window of anxiety opened once she became aware of the imminent danger. *See Beynon*, 351 Md. at 507–08. She was aware of an impending crash just as the decedents in *Beynon* and *Smallwood* were aware of their respective impending crashes. Her potential fear began when she felt the first impact and felt her car revolving, and it ended at the second impact, when the car collided with the guardrail. Finally, there is no dispute that Mr. Sheehan's negligence proximately caused Ms. Smith's emotional distress. He confessed to his negligence below, and the court instructed the jury that he was liable: "The parties have agreed that Dylan Sheehan caused the accident. This fact is now not in dispute and should be considered proven." The circuit court erred, then, by not instructing the jury on her pre-impact fright.

Mr. Sheehan argues that "pre-impact fright does not apply when there is no evidence that the appellant ever saw the appellee's vehicle prior to the accident," and here, because Ms. Smith never saw his car, he contends that she was not entitled to the pre-impact fright jury instruction. Mr. Sheehan relies on *Hendrix* for this principle, but that case doesn't

14

answer the question. It's true that Ms. Smith did not see Mr. Sheehan's vehicle before it struck hers. It also is true that in *Hendrix*, there was no dispute that the appellant never saw the appellee's vehicle before it struck hers. 205 Md. App. at 32. But there was more than one collision here—(1) Mr. Sheehan crashing into her vehicle, and (2) her vehicle crashing into the guardrail. Ms. Smith hasn't claimed pre-impact fright related to the initial collision, when Mr. Sheehan rear-ended her, only for the window of anxiety before the second collision.

Ms. Smith experienced two collisions. As a factual matter, she only saw one of them coming (the second). But we don't agree as a legal matter that pre-impact fright should be available only for the first. So long as Ms. Smith could meet the "'minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired,'" *Handy v. Box Hill Surgery Ctr. LLC*, 255 Md. App. 183, 198 (2022) (*quoting Copsey v. Park*, 228 Md. App. 107, 119 (2016), *aff'd*, 453 Md. 141 (2017)), and she did, she was entitled to have the court give the pre-impact fright instruction. She met this burden, and the circuit court abused its discretion in declining to give the pre-impact fright instruction.

> 3. *The given instruction did not adequately cover Ms. Smith's pre-impact fright.*

Mr. Sheehan argues that the "fear and fright that [Ms. Smith] suffered as a result of the accident was adequately included in the instructions that the trial court read the jury." We disagree.

The instruction Mr. Sheehan references is MPJI 10:2, Compensatory Damages For

Bodily Injury, which provides general instructions about measuring compensatory damages in injury cases:

> In an action for damages in a personal injury case, you shall consider the following:
>
> (1) The personal injuries sustained and their extent and duration;
>
> (2) The effect such injuries have on the overall physical and mental health and well-being of the plaintiff;
>
> (3) The physical pain and mental anguish suffered in the past and that with reasonable probability may be expected to be experienced in the future;
>
> (4) The disfigurement and humiliation or embarrassment associated with such disfigurement;
>
> (5) The medical and other expenses reasonably incurred in the past and that with reasonable probability may be expected in the future;
>
> (6) The loss of earnings in the past and such earnings or reduction in earning capacity that with reasonable probability may be expected in the future.

MPJI-Cv 10:2. That same instruction tells the jury to itemize its verdict so that it shows the amounts it intends to award for various damages:

> In awarding damages in this case you must itemize your verdict or award to show the amount intended for:
>
> (1) The medical expenses incurred in the past;
>
> (2) The medical expenses reasonably probable to be incurred in the future;
>
> (3) The loss of earnings and/or earning capacity incurred in the past;
>
> (4) The loss of earnings and/or earning capacity reasonably probable to be expected in the future;
>
> (5) The "Noneconomic Damages" sustained in the past and reasonably probable to be sustained in the future. All damages that you find for pain, suffering, pre-impact fright, inconvenience, physical impairment, disfigurement, loss of

16

consortium, or other non-pecuniary injury are "Noneconomic Damages;"

(6) Other damages.

*Id.*

Mr. Sheehan relies on the third consideration, "The physical pain and mental anguish suffered in the past and that with reasonable probability may be expected to be experienced in the future," as sufficient to cover the ground a pre-impact fear instruction would cover.

It's not. If the general instruction for bodily injury covered pre-impact fright in all cases, it would render the pre-impact fright instruction superfluous. The pre-impact fright instruction offers definition and detail that the general instruction doesn't. *First*, the general instruction encompasses mental anguish from the past and in the future, MPJI-Cv 10:2, whereas compensation for pre-impact fright is limited to the claimant's legitimate window of anxiety. *Beynon*, 351 Md. at 507. It only tracks the time between when the claimant becomes conscious of the imminent threat and the eventual impact and doesn't include damages outside that window. *Id.* at 507–08. *Second*, although a different provision of the general instruction directs the jury to specify the amount awarded for pre-impact fright, the instruction does not define what pre-impact fright is, unlike the pre-impact fright instruction.

Furthermore, MPJI-Cv 10:2 requires that the court instruct the jury with MPJI-Cv 10:1, Introductory Statement, which advises that should the jury find the defendant liable, the jury must then consider damages and fashion an appropriate award if the plaintiff has met their burden in proving each item of damages claimed:

17

> If you find for the plaintiff on the issue of liability, then you must consider the question of damages. It will be your duty to determine what, if any, award will fairly compensate the plaintiff.
>
> The plaintiff has the burden to prove by a preponderance of the evidence each item of damage claimed to be caused by the defendant. In considering the items of damage, you must keep in mind that your award must adequately and fairly compensate the plaintiff. However, an award should not be based on guesswork.

MPJI-Cv 10:1. The court gave this Introductory Statement, but it provided no explanation to a juror about what pre-impact fright is, or any clarity to a juror who might conflate it with the pain and suffering suffered from the crash itself. *Compare* MPJI-Cv 10:2 (non-economic damages include "pain, suffering, pre-impact fright, inconvenience, physical impairment, disfigurement" etc.), *with Beynon*, 351 Md. at 508 ("'[P]re-impact fright' damages should compensate a decedent's fright, not the resultant death."). For these reasons, we conclude that the general instructions given in this case did not cover pre-impact fright adequately.

> 4. *The circuit court's failure to provide the pre-impact fright instruction was not a harmless error.*

*Finally*, Mr. Sheehan argues that even if the circuit court erred in not giving the pre-impact fright instruction, its error was harmless in this case. Again, we disagree.

"The harmless error test is one for which Maryland courts, like many other jurisdictions, have declined to establish 'precise standards.'" *Barksdale v. Wilkowsky*, 419 Md. 649, 662 (2011). Instead, Maryland courts determine prejudice on a case-by-case basis. *Id.* Here, Ms. Smith "must show more than that prejudice was *possible*; she must show instead that it was *probable*." *Id.*; *Gonzalez-Perdomo*, 248 Md. App. at 589. In this

18

case, we cannot say that the court's error was harmless. *Barksdale*, 419 Md. at 670 ("[I]n certain cases, the mere inability of a reviewing court to rule out prejudice, given the facts of the case, may be enough to declare an error reversible.").

During closing argument, Ms. Smith informed the jury that she was seeking $156,000 in damages.[1] She argued that the jury should itemize the damages and award $100,000 for her fear and loss of consciousness; $10,000 for her headaches; $10,000 for her chest pain; $5,000 for her shoulder pain; $10,000 for the injury to her shin; $6,000 for her back pain; and $10,000 for the three months of treatment for those injuries. Mr. Sheehan, on the other hand, argued that the jury should only award Ms. Smith $10,000: $1,000 for her emergency room visit; $6,000 for her physical therapy; and about $3,000 in lost wages. The jury awarded Ms. Smith $5,000 total, half of what Mr. Sheehan effectively offered.

Because the court didn't instruct the jury on pre-impact fright, we cannot say with confidence that the jury knew that it could award pre-impact fright damages as an individual item:

> In an action for damages in a personal injury case, you shall consider the following. The personal injuries sustained and their extent and duration. Two, the effects such injuries have on the overall physical and mental health and well-being of the Plaintiff. Three, the physical pain and mental anguish suffered in the past and that with reasonable probability may be expected to be experienced in the future.
>
> In awarding damages in this case, you must itemize your

---

[1] The trial transcript here shows that one of the damages items that Ms. Smith identified was "inaudible," hence the discrepancy from the items that were audible and the sum of $156,000.

> verdict or award to show the amount intended for the non-economic damages sustained in the past and reasonably probable to the sustained in the future. All damages that you find for pain, suffering, inconvenience, physical impairment or other non-pecuniary injury are non-economic damages.
>
> The affect[sic] that an injury might have upon a particular person depends upon the susceptibility to injury of the Plaintiff. In other words, the fact that the injury would have been less serious if inflicted upon another person should not affect the amount of damages to which the Plaintiff may be entitled.

Although this instruction tracked MPJI-Cv:10:2 closely, it omitted pre-impact fright from the definition of non-economic damages. *Cf.* MPJI-Cv:10:2 ("All damages that you find for pain, suffering, *pre-impact fright*, inconvenience, physical impairment . . . or other non-pecuniary injury are 'Noneconomic Damages.'" (emphasis added)). We obviously don't know what the jury considered or didn't, but the omission could well have mattered, especially given the disparity between the amounts the parties argued for and the amount the jury actually awarded.

Although Ms. Smith was able to argue her pre-impact fright theory to the jury in closing, we are not persuaded that the mere opportunity to argue could overcome the absence of an instruction that stated the law correctly and was generated by the evidence. Because the jury did not receive the instruction, it was unaware of the significance of this evidence, in a case where the sole issue was damages. To be sure, the verdict sheet contained a question about whether the accident involving Mr. Sheehan and Ms. Smith proximately caused Ms. Smith's damages. But the court already had instructed the jury that Mr. Sheehan was responsible for the accident. It would have been no great leap to infer that because he was responsible for the accident, Mr. Sheehan proximately caused Ms.

20

Smith's injuries. Indeed, the jury even found as much. All that remained was the amount the jury would award in damages, so the precise definitions of the potentially compensable damages were all the more important here. *See Kelbaugh v. Mills*, 108 Md. App. 89, 98–99 (1996) (emphasizing that where there is conflicting evidence, it is all the more important that court's instruction to jury reflects each party's position).

When considering whether a circuit court should have provided a particular instruction to the jury, or whether it instructed them erroneously, we "engage in a comprehensive review of the record, and base [our] determination on the nature of the instruction and its relation to the issues in the case." *Barksdale*, 419 Md. at 670. On this record, the court's decision not to instruct the jury on pre-impact fright wasn't harmless. We reverse the judgment and remand for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

21